**Salvador PEREA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–92–00112–CR.**

Court of Appeals of Texas, Tyler.

Jan. 4, 1994.

Sam Griffith, Tyler, for appellant.

Jeffery Herrington, Dist. Atty., Palestine, for appellee.

HOLCOMB, Justice.

This appeal is taken from Appellant's conviction for unlawful delivery of marihuana. After finding Appellant guilty, the jury assessed punishment at twelve (12) years confinement. Appellant raises four points of error.

Appellant contends the trial court committed error: (1) in denying his motion for mistrial after the State referred to a criminal charge which was not a final conviction that had been taken into consideration in order to impeach a witness; (2) in denying Appellant's motion for mistrial after the State asked specific questions regarding the circumstances of a prior conviction in order to impeach; (3) in denying Appellant's motion in limine regarding stale convictions, and (4) contending there was no evidence, or alternatively, insufficient evidence, to support his conviction.

We shall first address Appellant's fourth point of error which challenges the sufficiency of the evidence. The standard of review for a challenge to the sufficiency of the evidence is to view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Cr.App.1988). Under *Jackson v. United States*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), we are required to position ourselves, not as a thirteenth juror in assessing the evidence, but rather as a final due process safeguard considering only the rationality of the fact-finder. As instructed in *Jackson*, we are not to disregard, realign, or re-weigh evidence, as this the jury as fact-finder has already done, being in the best position to consider the evidence first-hand, and perhaps more significantly, to observe the demeanor and expression of the witnesses.

The State's first witness was Mark Jordan, a Henderson County Sheriff's Deputy working under-cover. He testified that around noon on December 7, 1990, he and a confidential informant went to Appellant's residence in Palestine to purchase marihuana from Appellant since he had received information that Appellant, his uncle Eloi Avila, and his brother, Raul Perea, all of whom resided at this location, were involved in drug trafficking. Jordan testified he returned that afternoon between 7:00 and 8:00 P.M., again accompanied by the confidential informant. At that time, Appellant agreed to sell him one ounce of marihuana for $100.00.

Appellant asked Jordan to go outside, which he did. Shortly thereafter, Appellant came outside and stated that he had what Jordan wanted and showed him four clear plastic bags containing what he said was marihuana. Jordan took the bags and gave Appellant $100.00, as agreed. He then left Appellant's residence. He testified that he was at Appellant's residence for approximately thirty to forty minutes and while he was there numerous other people were present, including Appellant's uncle Eloi and brother, Raul (also known as "Rabbit" and "Frankie"). Jordan testified that he knew Eloi and Raul because he had previously purchased controlled substances from them. Jordan testified that he observed several high school teenagers purchase marihuana while at Appellant's residence.

On cross-examination, Jordan stated that he had been to this residence approximately ten to twelve times prior to December 7, and he had begun dealing with Appellant's uncle, Eloi, approximately three to four weeks earlier. Although he had seen Appellant once or twice before, he had not talked with him prior to December 7. Jordan testified his undercover name was "Gary Wade," and that when he went to the residence around noon he purchased a quarter of an ounce of marihuana from Appellant. When he returned to Appellant's residence that night, there was a "keg party" in progress with drinking, music, dancing, and rock cocaine being smoked.

Jordan admitted that he drank beer at Appellant's house before; however, he denied smoking marihuana or doing drugs. Jordan denied becoming intoxicated while at Appellant's house.

The State next called Ruth Shields and Donna Richardson, who testified regarding the chain of custody. The final State's witness was the chemist, Juan Ortiz, who testified that the four plastic bags that had been purchased from Appellant contained 4.50 ounces (14.40 grams) of marihuana.

Appellant then presented his evidence. Eloi Avila testified that he was currently in the Anderson County Jail after pleading guilty to delivery of cocaine to Jordan, that Jordan came to Appellant's house with a

twelve-pack of beer while they were having a party, and that he and Jordan went into a restroom and "got high on cocaine." He said he never saw Jordan talking to Appellant, nor did he see Jordan buy anything from Appellant.

Raul Perea was the next witness. He corroborated Avila's testimony. Raul was also in the Anderson County Jail after having pled guilty to delivery of cocaine to Jordan. Raul testified to the party going on at Appellant's house when Jordan and a Jimmy Cole showed up, and that Jordan only talked to him (Raul) and Avila about buying drugs that night. He stated Jordan never talked to Appellant. He further testified that Jordan was "staggering," and was "really messed up" from the use of cocaine, marihuana, and beer. He testified that Jordan had been there earlier in the day and drank beer, "smoked weed," and "played washers," and that night, that Jordan had played dominos and shot dice. Raul testified that dope deals always took place in the back room, instead of in the manner Jordan had testified to, and that Appellant did not "mess with drugs."

On cross-examination by the State, Raul testified that Appellant had formerly used drugs, but had since quit. He also admitted that he had been convicted previously of aggravated robbery and burglary of a building. Raul further stated the police had previously confused him with the Appellant, Eloi, and Frankie Rivera.

Appellant took the stand and testified that he never delivered or sold marihuana or any other drug to Jordan. He had met Jordan three or four times, and one night while he was at Lela's Club in November of 1990, they had a conversation and played pool together. Afterwards, Jordan gave Appellant and his step-father, Frank Rivera, a ride to their home where Jordan came in and drank beer. Appellant confirmed that on December 7, 1990, he was in the living room shooting dice when Jordan and Jimmy Cole arrived, and Jordan joined in the dice game. He denied going into the bedroom to get marihuana to bring to Jordan. He also testified that other people had confused him with Raul and Eloi. Appellant admitted that he had previously

pled guilty to aggravated robbery with a deadly weapon and delivery of marihuana.

Applying the standard we have previously set forth to this case, we hold that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. As pointed out, Jordan positively identified Appellant as the person who sold him marihuana. He had purchased cocaine from Eloi Avila and Raul Perea, and was instrumental in their convictions for delivery of cocaine. There appears to be no mistake in identity. Thus, the testimony of Avila and Raul Perea concerning Jordan's conduct could have been disregarded by a rational trier of fact since Jordan was the person responsible for their convictions. Point of error number four is overruled.

By his first point of error, Appellant contends that the trial court erred in not granting a mistrial when the State, for the purpose of impeaching defense witness Eloi Avila, referred to a criminal offense which had been taken into consideration in a guilty plea by Avila to another criminal offense because the offense "taken into consideration" was not a final conviction. It appears that on direct examination, Eloi Avila testified that he had been sentenced to ten years to TDCJ–ID for delivery of cocaine on a plea of guilty. On cross-examination by the State, the witness admitted that on October 4, 1991, he pled guilty to a charge of delivery of cocaine, alleged to have occurred on December 10, 1990, and pled guilty to a charge of delivery of cocaine alleged to have occurred on October 12, 1990, which was taken into consideration in the plea of guilty to the offense occurring on December 10, 1990. Appellant's trial counsel objected to the questions and answers concerning the offense which had been taken into consideration, and asked the court to instruct the jury to disregard the questions and answers. The court sustained Appellant's objection and instructed the jury to disregard the evidence of the case that was taken into consideration on the plea of guilty. The court then proceeded to deny Appellant's motion for a mistrial. Section 12.45 of the TEXAS PENAL CODE provides that a defendant may "admit during the sentencing hearing *his guilt* of one or more unadju-

dicated offenses and request the court to take each into account in determining sentence for the offense or offenses of which he stands adjudged guilty." The State contends an admission of guilt to an unadjudicated offense under these circumstances becomes a part of the final conviction for the primary offense, as it is reflected in the judgment, and cites *Wilkins v. State* for the proposition that they should have been allowed to impeach Avila with this offense. *Wilkins v. State*, 574 S.W.2d 106 (Tex.Cr.App.1978). In *Wilkins*, the appellant entered a plea of guilty to an indictment for burglary and the trial court took into consideration an unadjudicated offense of robbery in assessing punishment. In affirming the conviction, the court stated:

> [A]ppellant was entering a plea of guilty to an unadjudicated offense as well as to the charge of burglary of a habitation. Since we have held that a plea of "true" to convictions alleged for the purpose of enhancement is sufficient to establish such convictions, *Latta v. State*, 507 S.W.2d 232 (Tex.Cr.App.1974); *Graham v. State*, 546 S.W.2d 605 (Tex.Cr.App.1977), it would therefore appear that the evidence here is sufficient to show a plea of guilty, or an admission, to the unadjudicated offense which is sufficient to allow the trial judge to take it into consideration and to bar the prosecution of this offense in McLennan County.

*Wilkins*, 574 S.W.2d at 108.

■ *Wilkins* stands for the proposition that a criminal offense which has been taken into consideration is final and a bar to subsequent prosecution. However, it does not mean it is a final conviction for the purpose of impeachment. We believe we must look further to *Whalon v. State*, 725 S.W.2d 181 (Tex.Cr.App.1986). In *Whalon*, the Court of Criminal Appeals held that an offense taken into consideration was "part of a defendant's prior criminal record and admissible under Article 37.07." *See Whalon*, 725 S.W.2d at 195. The TEXAS CODE OF CRIMINAL PROCEDURE, article 37.07, section 3 (Vernon Supp. 1991), defines the term "prior criminal record" as including final convictions. Thus, an offense taken into consideration in sentenc-ing is part of a defendant's prior criminal record and become a judgment of conviction for that offense. *Murray v. State*, 840 S.W.2d 675, 679 (Tex.App.—Tyler, no pet.).

TEXAS RULE OF CRIMINAL EVIDENCE 609(a) governs the impeachment of a witness by conviction. It reads as follows:

**Impeachment by conviction of crime.**

(a) General Rule. For the purpose of attacking the credibility of a witness evidence that he has been *convicted* of a crime shall be admitted if elicited from him or established by record, but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

TEX.R.CRIM.EVID. 609(a) (emphasis added).

■ Our reading of the rule leads us to conclude that a witness in a criminal case may be impeached by evidence of offenses taken into consideration in sentencing since their prosecution is finally concluded by the judgment of conviction in the main case. That judgment serves to bar prosecution of the offenses considered in sentencing. TEX.PENAL CODE ANN. § 12.45(c) (Vernon 1991). It may be entered only upon the defendant's plea of guilty to the offenses and his request that they be considered in determining his sentence. Evidence that the offenses were taken into consideration in sentencing may be introduced during the punishment phases of subsequent prosecutions of other offenses and used by the jury in assessing punishment. *See Whalon*, 725 S.W.2d at 195. If under a similarly worded statute a jury may use the evidence of these offenses in assessing the actor's punishment in subsequent prosecutions wherein he is the accused, it makes no sense to deny a jury the evidence in assessing his credibility in later trials where he is only a witness. Moreover, since the court *sustained* Appellant's objection to the proper introduction of impeachment evidence, there is no error of which Appellant can complain. Point of error one is overruled.

■ In point of error number two, Appellant alleges that the trial court committed

reversible error in denying his motion for mistrial after the State asked specific questions regarding a prior conviction in order to impeach a witness. Under cross-examination of Appellant by the State, the testimony was as follows:

Q: What was your sentence? You said out of Midland County was for aggravated robbery? Tell us what is aggravated robbery? Did you have a gun?

A: Yes, sir.

Q: What did you rob?

A: 7–Eleven.

[MR. HOUSE, APPELLANT'S COUNSEL]: Your Honor, I'm going to object to him going into details of the offense. Details of any prior conviction are not admissible.

THE COURT: Sustained.

MR. HOUSE: I ask the jury to disregard that.

THE COURT: Disregard the last question and answer.

MR. HOUSE: Move for a mistrial.

THE COURT: Motion for a mistrial is denied.

The State is not permitted to allude to, or in any way bring before the jury, the facts surrounding the commission of the offense forming the basis of a conviction which is used for purposes of impeachment. *Lege v. State,* 501 S.W.2d 880 (Tex.Cr.App.1973); *Mullins v. State,* 492 S.W.2d 277 (Tex.Cr. App.1973). In the instant case, however, the jury was instructed to disregard the questions and answers relating to the details of the prior aggravated robbery conviction, and the prosecutor did not allude to such facts in the guilt or innocence phase, punishment phase, or closing arguments. We therefore find the very limited examination on the details of this previous conviction and the fact that the court immediately instructed the jury to disregard rendered the error harmless beyond a reasonable doubt under TEXAS RULE OF APPELLATE PROCEDURE 81(b)(2).

Appellant's third point of error contends the trial court erred in denying his motion in limine to exclude evidence of prior convictions for impeachment under TEXAS RULE OF CRIMINAL EVIDENCE 609 because more than ten years had elapsed since the date of conviction. Appellant's motion in limine was heard outside the presence of the jury prior to Appellant testifying. The court denied the motion. Appellant then testified on direct examination that he had twice before been convicted of a felony. The evidence shows that Appellant was convicted on September 1, 1978 of the offense of delivery of marihuana and sentenced to three years, probated for three years. On December 7, 1979, Appellant was sentenced to nine years for aggravated robbery with a deadly weapon. On January 16, 1980, Appellant's probation for delivery of marihuana was revoked and he was sentenced to serve three years in prison. Appellant was paroled on July 8, 1988.

We find that the trial court did not err in denying Appellant's motion in limine. Denial of a motion in limine will not preserve error for appeal. The complaining party must object on the proper grounds when the evidence is offered during the trial. *Cook v. State,* 741 S.W.2d 928, 939 (Tex.Cr. App.1987); *Romo v. State,* 577 S.W.2d 251, 252 (Tex.Cr.App.1979); *Benavides v. State,* 763 S.W.2d 587, 590 (Tex.App.—Corpus Christi 1988, pet. ref'd). In the present case, Appellant's proper remedy would have been to object on the proper grounds when the State attempted to impeach him on the prior convictions. Appellant did not do this; instead, he chose to testify on direct examination regarding his prior convictions, thus waiving any error in the admission of the prior convictions on the grounds that they were too remote at the time.[1] For all the above reasons, this point of error is overruled.

The judgment of the trial court is **affirmed.**

1. We note that since the witness had been released from confinement within ten years, the conviction met the first test of admissibility under Tex.R.Crim.Evid. 609(b). *Lucas v. State,* 791 S.W.2d 35, 50 (Tex.Cr.App.1989).