**Willie Lee WOODARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–95–238–CR.**

Court of Appeals of Texas,
Waco.

Oct. 16, 1996.

Stephen A. Gustitis, College Station, for appellant.

Bill Turner, District Attorney, Vanessa P. Muldrow, Asst. District Attorney, Bryan, for appellee.

Before CUMMINGS and VANCE, JJ., and McDONALD, C.J. (Retired).

## OPINION

CUMMINGS, Justice.

A jury convicted appellant, Willie Lee Woodard, of burglary of a habitation, TEX.PENAL CODE ANN. § 30.02(a)(3) (Vernon 1994), and the trial court sentenced him to sixty years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. Woodard brings three points of error on appeal: (1) the trial court erred in admitting punishment evidence of which Woodard received no notice as required by statute; (2) the trial court erred in denying Woodard's motion to suppress an illegal identification; and (3) there is insufficient evidence to support Woodard's conviction. We affirm.

In his first point of error, Woodard argues the trial court committed reversible error in admitting punishment evidence when the State had not provided notice of its intent to do so. TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(g) (Vernon Supp.1996). In the present case, Woodard's burglary of a habitation conviction was enhanced by his prior felony convictions for burglary of a habitation in August 1988 and delivery of a controlled substance in September 1986, as alleged in the indictment. TEX.PENAL CODE ANN. § 12.46 (Vernon 1994). To prove the enhancement allegations against Woodard, the State offered Woodard's penitentiary packets ("pen packets") as evidence of these two prior felony convictions. Woodard offers no

argument against the admission of the two felony convictions used to enhance his punishment. He does, however, complain that the trial court erred in failing to redact from the pen packets information relating to criminal offenses not used by the State for enhancement, namely, a conviction for burglary of a motor vehicle in September 1979 and three unadjudicated offenses used to enhance the punishment for the September 1986 conviction for delivery of a controlled substance. Woodard maintains error occurred in that both of these pen packets referred to offenses of which no notice was provided to Woodard as required by article 37.07, section 3(g), before the State introduced them into evidence. TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(g).

During the punishment phase of a trial, any evidence the trial court deems relevant to the assessment of punishment may be offered by either the State or the defendant. TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1996). The Code of Criminal Procedure further provides that upon request from the defendant, the State must provide the defendant with reasonable notice of its intent to introduce any evidence allowed by article 37.07, section 3(a). TEX. CODE CRIM.PROC.ANN. art. 37.07, § 3(g); TEX. R.CRIM.EVID. 404(b).

The Court of Criminal Appeals addressed the "reasonable notice" requirement of TEX. R.CRIM.EVID. 404(b) in *Buchanan v. State,* 911 S.W.2d 11, 15 (Tex.Crim.App.1995). The Court held that the "mere presence of an offense report [in the State's file] indicating the State's awareness of the existence of such evidence" does not satisfy the State's requirement of giving the defendant "reasonable notice" of its intent to introduce extraneous offenses into evidence even though the defendant is provided access to the contents of the entire file. *Id.* Woodard urges this Court to apply the reasoning in *Buchanan* to his case and hold that the listing of prior arrests in the pen packets that were used to enhance his convictions does not provide him with "reasonable notice" of the State's intent to introduce those offenses into evidence. We decline to do so.

The facts of *Buchanan* are distinguishable from Woodard's situation. In *Buchanan,* the State introduced evidence, during the guilt-innocence phase before a jury, of an uncharged incident where the appellant attempted to kidnap the complainant several days prior to the offense of which he was actually charged and convicted. *Id.* On appeal, the appellant complained that merely being provided access to the State's file did not satisfy the requirement of reasonable notice of the State's intent to introduce the prior incident against the appellant. *Id.* at 13–15. The Court agreed with the appellant and held that the State's "open file policy" did not afford the appellant reasonable notice. *Id.* at 15.

As stated previously, Woodard's complaint is limited to the admission of the offenses referenced in the pen packets; he does not complain that he was not provided adequate notice of the felonies actually used to enhance the main conviction. In this case, the State gave Woodard copies of the pen packets and his criminal history which would be used to prove the enhancement allegations against him and told him everything in the documents was subject to introduction. Consequently, we refuse to extend the holding in *Buchanan* to situations such as Woodard's where Woodard had copies of the documents the State would introduce and those documents listed Woodard's prior arrests, which he obviously was aware existed. Therefore, we find the State complied with the reasonable notice requirement when it presented Woodard with copies of the pen packets listing the other offenses for which Woodard was actually arrested and told him they intended to use them as evidence.

■ Woodard further complains that, even if being provided copies of the documents the State intended to use during the punishment phase satisfied the reasonable notice requirement for prior convictions, the three unadjudicated offenses used to enhance the September 1986 conviction for delivery of a controlled substance were not "convictions" and he was therefore entitled to the special notice required by article 37.07, section 3(g). TEX.CODE CRIM.PROC. ANN. art. 37.07, § 3(g). We disagree.

The Code of Criminal Procedure provides, "If the attorney representing the [S]tate intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act." *Id.* However, since Woodard's three unadjudicated offenses were used to enhance his September 1986 conviction for delivery of a controlled substance pursuant to TEX.PENAL CODE ANN. § 12.45(a) (Vernon 1994), those offenses became part of that judgment and part of Woodard's criminal record. *See Perea v. State,* 870 S.W.2d 314, 318 (Tex.App.—Tyler 1994, no pet.); *Murray v. State,* 840 S.W.2d 675, 679 (Tex.App.—Tyler 1992, no pet.); *see also Whalon v. State,* 725 S.W.2d 181, 195 (Tex.Crim.App. 1986) (on rehearing); *Wilkins v. State,* 574 S.W.2d 106, 108 (Tex.Crim.App.1978). Consequently, we conclude that Woodard was not entitled to the extra notice required by article 37.07, section 3(g), for extraneous offenses not resulting in final convictions. TEX. CODE CRIM.PROC.ANN. art. 37.07, § 3(g). Therefore, we hold the State satisfied the reasonable notice requirement and overrule Woodard's first point of error.

In his second point Woodard asserts the trial court erred in refusing to suppress an in-court identification of him by a witness because it was based upon an impermissibly suggestive pre-trial identification procedure. Woodard argues the trial court erred in permitting a witness' in-court identification of Woodard because the identification was obtained from an impermissibly suggestive one-man showup prior to trial. Woodard maintains the witness was only able to identify him in court because she saw him at the one-man showup and identified him as the perpetrator because he was the only suspect present at the showup.

■ Identification procedures that are unnecessarily suggestive violate a suspect's right to a fair trial under the Fourteenth Amendment to the United States Constitution. *Manson v. Brathwaite,* 432 U.S. 98, 113, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140 (1977). Identification procedures where suspects are viewed singly, while not per se unnecessarily suggestive, have been uniformly criticized for being unduly suggestive. *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); *see also Manson,* 432 U.S. at 116, 97 S.Ct. at 2252; *Delk v. State,* 855 S.W.2d 700, 706 (Tex.Crim. App.), *cert. denied,* 510 U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993); *Garza v. State,* 633 S.W.2d 508, 512 (Tex.Crim.App. [Panel Op.] 1981) (on rehearing). When an impermissibly suggestive pre-trial identification procedure is used, the witness' subsequent in-court identification of the defendant will not be allowed unless the prosecution can establish an independent basis for the reliability of the in-court identification of the defendant besides the pre-trial identification at issue. *Manson,* 432 U.S. at 113–14, 97 S.Ct. at 2252–53; *Delk,* 855 S.W.2d at 706. A totality of the circumstances test is employed to determine whether the in-court identification is independently reliable. *Manson,* 432 U.S. at 113, 97 S.Ct. at 2252; *Delk,* 855 S.W.2d at 706; *Garza,* 633 S.W.2d at 513. Five factors are used in making this determination: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the pre-trial confrontation; and (5) the time between the crime and the confrontation. *Manson,* 432 U.S. at 114, 97 S.Ct. at 2253; *Delk,* 855 S.W.2d at 706; *Garza,* 633 S.W.2d at 513.

■ At the pre-trial suppression hearing, Lupe Chavarria, witness to the crime, testified that as she was driving past the mobile home of her cousin, Rebecca Ocon, on January 30, 1995, she observed a glass door ajar. Knowing her cousin was not at home, Chavarria stopped to investigate. As Chavarria drove into the driveway, she saw a strange man exiting through the opened door. She got out of her car and asked the man what he was doing. Walking toward Chavarria, the man answered her, then walked past her and into the nearby woods. After the encounter, Chavarria went to a neighbor's house and

called the police. Relating the events to the 9-1-1 dispatcher, Chavarria described the man as a tall, thin, black male with a beard who was wearing blue pants and a blue shirt.

Chavarria testified that the police arrived at the house within 20 minutes of her call, and after spending approximately 15 minutes investigating the scene, one of the officers drove Chavarria to where a man was being detained. Chavarria stated that once she and the officer arrived where the man was being held, she identified the man as the stranger who had been at her cousin's house. When questioned directly regarding how she could identify the man, Chavarria stated that her identification of Woodard was based upon her observations of Woodard as he was leaving the house and not from the one-man showup.

Officer Blake Bell of the Bryan Police Department testified that he responded to the dispatcher's report that a burglary had just occurred on Columbus Street. He stated that the description of the suspect was of a "tall, thin, black male wearing a black or blue cap, blue jeans, and a blue denim jacket, and the black man had a beard." According to Officer Bell, when he stopped a man fitting the description, the man "had everything that our dispatchers had told us except for the blue denim jacket."

Woodard asserts that the discrepancies in Chavarria's description of the burglar demonstrate the unreliability of the in-court identification. Therefore, he argues, the trial court erred in permitting Chavarria to identify him at trial. Reviewing all the evidence adduced at the suppression hearing, we conclude that the trial court did not abuse its discretion in denying Woodard's motion to suppress. *Spencer v. State*, 466 S.W.2d 749, 752–53 (Tex.Crim.App.1971) (holding that a trial court's ruling on motion to suppress in-court identification is subject to abuse of discretion standard of review). Chavarria had a significant opportunity to view Woodard: she encountered him in the middle of the day and he walked within a few feet of her as he was leaving the scene of the crime.

Chavarria's level of attention was also escalated. She and Woodard, a stranger, conversed as Woodard was leaving the Ocons' house at a time Chavarria knew her relatives to be at work. Chavarria also gave a detailed description of Woodard and his attire. The time between the crime and the showup was exceptionally short, well under an hour. And Chavarria's identification at the showup was positive. The only discrepancies in the record from the suppression hearing concerned the fact that Woodard neither wore blue jeans nor a denim jacket. However, Officer Bell testified that Woodard did have on a blue shirt and was wearing blue pants. Considering the totality of the circumstances, we conclude the trial court did not err in overruling Woodard's motion to suppress the in-court identification. Woodard's second point of error is overruled.

In his third point, Woodard maintains that the record contains insufficient evidence to support his conviction for burglary of a habitation. Woodard contends the evidence is insufficient to prove: (1) he was the burglar, (2) the crime occurred in the state of Texas, and (3) the structure burglarized was a "habitation."

Woodard asserts that, because there was insufficient evidence to support his conviction, he was denied his right to due process of law as required by both the federal and state constitutions. By raising a denial of due process complaint, Woodard in essence claims there is legally insufficient, as opposed to factually insufficient, evidence to support his conviction. The Court of Criminal Appeals has stated that *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), sets the minimum standard for sustaining a conviction under the Due Process Clause of the Fourteenth Amendment. *Clewis v. State*, 922 S.W.2d 126, 132 (Tex.Crim. App.1996). Therefore, we will review Woodard's complaint of insufficient evidence by the legally sufficient evidence standard of review established in *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2781. *See also Geesa v. State*, 820 S.W.2d 154, 157 (Tex.Crim.App. 1991).[1] The standard for determining legally

---

1. Woodard did not properly raise a complaint that the evidence to support his burglary convic-

tion was factually insufficient. Therefore, our analysis of the evidence will be limited to wheth-

sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Geesa*, 820 S.W.2d at 157.

■ First, as stated above, there was ample evidence presented at trial that Woodard was in fact the person who burglarized the Ocons' house. Lupe Chavarria positively identified Woodard as the stranger she encountered and conversed with as he was leaving the Ocons' house at a time Chavarria knew the Ocons to be at work. Further, Rebecca Ocon, a resident of the mobile home that was burglarized, testified that the jewelry found in Woodard's possession when he was arrested belonged to her and other members of her family. *See Williams v. State*, 621 S.W.2d 613, 614 (Tex.Crim.App. [Panel Op.] 1981), *cert. denied*, 456 U.S. 908, 102 S.Ct. 1755, 72 L.Ed.2d 165 (1982) (holding that the exclusive, unexplained possession of recently stolen property is sufficient evidence to sustain a conviction for burglary).

■ Secondly, sufficient evidence was presented by the State to establish the burglary did occur in the state of Texas. Chavarria testified she was in Brazos County when she witnessed a strange man coming out of the Ocons' house. Officer Blake Bell, Officer Matthew Brent Ratekin, and Detective James Harlan Pope all testified to being employed by the Bryan Police Department. Celestino Ocon further testified that he lived in Bryan and worked for Texas A & M University. Consequently, the references to places known to be in Texas represented ample evidence on which the jury could base its verdict. *See Hewitt v. State*, 734 S.W.2d 745, 747 (Tex.App.—Fort Worth 1987, pet. ref'd) (holding that references to county where crime occurred, a state agency, and various communities within the county was sufficient to show that crime occurred within the state of Texas).

■ Lastly, both Celestino Ocon and Rebecca Ocon, the owners of the mobile home that was burglarized, testified that the mobile home was a "habitation" and was their home. "Habitation" is defined as "a structure or vehicle that is adapted for the overnight accommodation of persons." TEX.PENAL CODE ANN. § 30.01(1) (Vernon 1994); *see also Wright v. State*, 768 S.W.2d 391, 392 (Tex.App.—El Paso 1989, no pet.) (holding that there was sufficient evidence to show a mobile home was a habitation). The uncontroverted testimony from the Ocons provided more than adequate evidence to allow the jury to find that a "habitation" had been burglarized.

After viewing the evidence in the light most favorable to the prosecution, we find there was legally sufficient evidence to allow a rational trier of fact to find Woodard guilty of burglary of a habitation. Woodard's third point of error is overruled.

The judgment is affirmed.

er the evidence is legally sufficient to support Woodard's conviction. *See Clewis*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996); *see also* TEX. R.APP.P. 74(f).