Order filed July 19, 2007
















 
 
  
 
 







 
 
  
 
 




Order filed July 19, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                       Nos. 11-05-00312-CR & 11-05-00313-CR 

                                                     __________

 

                                   OSVALDO
LOPEZ, JR., Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 259th District Court

                                                          Jones County, Texas

                                             Trial
Court Cause Nos. 9004 & 9005

 



 

                                                                     O
R D E R

 

Our former opinion and judgment dated May 24,
2007, are withdrawn, and our opinion and judgment dated July 19, 2007, are
substituted therefor.

 

 

TERRY McCALL

July 19,
2007                                                                                       JUSTICE

Do not publish this page only. 
See Tex. R. App. P.
47.2(b).

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.











 
 
  
 
 







 
 
  
 
 




Opinion filed July 19, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of
Appeals

                                                                 ____________

 

                                       Nos. 11-05-00312-CR & 11-05-00313-CR 

                                                     __________

 

                                   OSVALDO
LOPEZ, JR., Appellant

 

                                                             V.

 

                                        STATE OF TEXAS, Appellee

 



 

                                         On
Appeal from the 259th District Court

                                                          Jones County, Texas

                                             Trial
Court Cause Nos. 9004 & 9005

 



 

                                                                   O
P I N I O N

 

The jury convicted Osvaldo Lopez, Jr. of two
deliveries of cocaine:  (1) a second
degree felony offense enhanced to a first degree felony offense of more than
one gram but less than four grams that occurred on September 4, 2001 (Cause No.
11-05-00313-CR) and (2) a state jail felony offense of less than one gram that
occurred on September 6, 2001 (Cause No. 11-05-00312-CR).  The trial court assessed punishment at forty
years confinement in Cause No. 11-05-00313-CR and at two years confinement in
Cause No. 11-05-00312-CR, both sentences to run concurrently.








Appellant asserts that he was provided with
ineffective assistance of counsel because his trial counsel failed (1) to
object to the traffic stop of appellant for narcotics officers to obtain his
driver=s license
information and (2) to object to the unduly suggestive procedure of the
undercover officer in identifying appellant from his driver=s license photograph.  Appellant also asserts that, without the
in-court identification of appellant by the undercover officer, which was a
result of the impermissible pretrial procedure, the evidence was legally and
factually insufficient to support the convictions.  Lastly, appellant contends that the trial
court erred in admitting impeachment evidence of prior offenses dismissed under
Tex. Penal Code Ann. ' 12.45 (Vernon 2003) by an earlier
court that had considered them in the punishment of appellant for an earlier
felony conviction.

Although we remand the cases because the trial
court erred in admitting the impeachment evidence, we first address appellant=s assertion that the evidence was
insufficient to support the convictions.

Background Facts

Sergeant Teofilo Garcia Jr. of the Texas
Department of Public Safety (DPS) was a narcotics officer based in Anson.  On September 4, 2001, a cooperating
individual told him that a man named AJunior@ would sell cocaine if Sergeant Garcia
wanted to set up a buy.  Born in Anson,
Sergeant Garcia had lived there most of his life and knew many of the people
who were involved with drugs, and they knew him.  Sergeant Garcia had received information that
the Aguirre family had been trafficking in drugs.  The cooperating individual=s reference to AJunior,@ his mentioning of the names of members
of the Aguirre family, and his description of where the named persons lived led
Sergeant Garcia to wrongly assume that the cooperating individual was talking
about Robert Aguirre Jr. as the potential seller of cocaine.  Sergeant Garcia=s
assumption had the additional support of the cooperating individual=s description of the pickup that AJunior@
would be driving: a white Ford F150 with a buyer=s
tag.  Sergeant Garcia had seen Larry
Aguirre, Robert Aguirre Jr.=s
brother, driving that pickup, and he had seen the pickup at the Aguirre
residence.








Because Sergeant Garcia was well known in Anson,
Sergeant James Rhodes was the undercover officer to purchase the cocaine.  Sergeant Rhodes told the cooperating
individual to contact AJunior@ to set up a purchase of two grams of
cocaine for $100 per gram later in the afternoon of September 4.  Sergeant Rhodes testified that, after
appellant drove up in the white Ford F150 pickup, the cooperating individual
simply introduced appellant as AJunior@ and then left.  Sergeant Rhodes then purchased 1.65 grams of
cocaine from appellant for $200. 
Sergeant Garcia testified that he was conducting surveillance for
Sergeant Rhodes but that he did not see AJunior,@ only the white Ford F150 pickup with
buyer=s
tags.  

Two days later, on September 6, Sergeant Rhodes
was preparing to make an undercover buy of methamphetamine from an individual
named Wilcox.  AJunior@ was driving a white Chevrolet pickup,
spotted Sergeant Rhodes, and stopped and asked Sergeant Rhodes if he would like
to purchase $20 worth of cocaine. 
Sergeant Rhodes made a second buy of .26 grams from AJunior.@

When Sergeant Rhodes delivered the two packets of
cocaine to the DPS lab, he listed the suspect as Robert Aguirre Jr. on both
initial reports.  The first report was
dated September 5, a Wednesday, and the second report was dated September
7.  After the second buy, Sergeant Rhodes
described AJunior@ to Sergeant Garcia who then realized
that the AJunior@ described was not Robert Aguirre Jr.
because Robert was a much larger person. 
A day or so later, Sergeant Garcia saw a person, whom he thought might
be the person described by Sergeant Rhodes, driving one of the Aguirres= pickups.  Sergeant Garcia asked another DPS trooper to
make a traffic stop to identify the driver. 
The trooper stopped appellant for not signaling and obtained the
information on appellant=s
driver=s
license.  Based on that information,
Sergeant Rhodes obtained appellant=s
driver=s license
photograph from Austin
and identified appellant as the seller of the cocaine.  He then corrected the two lab reports to read
AOsvaldo Lopez@
instead of ARobert
Aguirres [sic] Jr.@

  Sergeant
Rhodes positively identified appellant at trial, stating that he remembered the
tear-drop tattoo by appellant=s
left eye as Aclear as
a bell@ even
though he had omitted that detail in his reports.  Sergeant Rhodes was certain B A100%
sure@ B that appellant was the person who had
sold him cocaine on September 4 and 6. 
He had stood approximately two to three feet from appellant, who was
behind a steering wheel, when he purchased the cocaine.  Sergeant Rhodes testified that appellant
drove a white Ford F150 on September 4 and a white extended cab Chevrolet
pickup on September 6.  The Chevrolet
pickup was registered in the name of Larry Aguirre, and appellant was also
driving that pickup when he was given a traffic ticket on October 23, 2001.








Appellant testified that he was married to an
Aguirre sister and that his sister was married to Larry Aguirre.  He also admitted driving the various Aguirre
pickups because he did not own a vehicle. 
Appellant testified that, when he was released from prison in April
2001, he came to live with his sister and Larry Aguirre in Anson.  He still lived with Aguirre family members at
1832 Avenue H, and he remembered driving an Aguirre pickup when he was stopped
on October 23. During his testimony, appellant said that he had never been to
1901 Avenue P even though Sergeant Rhodes had testified that the white
Chevrolet pickup was registered in the name of Larry Aguirre at 1901 Avenue
P.  Sergeant Garcia also testified that
he followed the white Ford F150 to 1901 Avenue P on September 4 just before the
pickup was driven to Avenue G where Sergeant Rhodes made the first buy.

Ineffective Assistance of Counsel

In appellant=s
second issue, appellant asserts that he received ineffective assistance of
counsel because his trial counsel failed to object to the traffic stop of
appellant to obtain his driver=s
license information and to object to the unduly suggestive identification
procedure followed by Sergeant Rhodes.  

In order to determine whether appellant=s trial counsel rendered ineffective
assistance at trial, we must first determine whether appellant has shown that
counsel=s
representation fell below an objective standard of reasonableness and, if so,
then determine whether there is a reasonable probability that the result would
have been different but for counsel=s
errors.  Strickland v. Washington, 466 U.S. 668 (1984); Hernandez v.
State, 988 S.W.2d 770 (Tex. Crim. App. 1999).  We must indulge a strong presumption that
counsel=s conduct
fell within the wide range of reasonable professional assistance, and appellant
must overcome the presumption that, under the circumstances, the challenged
action might be considered sound trial strategy.  Stafford
v. State, 813 S.W.2d 503, 508-09 (Tex. Crim. App. 1991).

Appellant argues that his trial counsel was
ineffective because he did not timely object and move to suppress appellant=s identification on the basis of an
illegal traffic stop.  Sergeant Garcia
testified that he remembered Trooper Brewster stopping appellant for not
signaling.  Sergeant Garcia had just seen
the person described by Sergeant Rhodes in the Aguirre pickup and asked Trooper
Brewster to make a stop.  Sergeant Garcia
did state that Trooper Brewster, after the stop, called him with the driver=s license information.  Trooper Brewster was in Iraq at the
time of trial.








The traffic stop of appellant for identification
was valid.  A police officer may stop and
briefly detain persons suspected of criminal activity, but the officer must
possess a reasonable suspicion to justify the investigative detention.  Terry v. Ohio,
392 U.S. 1 (1968); Davis v. State,
947 S.W.2d 240, 242-44 (Tex. Crim. App. 1997). 
Sergeant Garcia had reasonable suspicion to stop appellant when he
spotted appellant in the Aguirre pickup: 
Sergeant Garcia had received information that the Aguirres were involved
in drug trafficking, he recognized the Aguirre pickup that appellant was
driving, and he believed that appellant was the person described by Sergeant
Rhodes.  See also Pichon v. State,
683 S.W.2d 422, 426 (Tex. Crim. App. 1984) (Aa
defendant=s face
cannot be a suppressible fruit of an illegal arrest@).  Appellant=s
trial counsel did not err by not challenging the stop.

Appellant also argues that his trial counsel was
ineffective because he did not object to Sergeant Rhodes=s
in-court identification of appellant as having been the result of an impermissibly
suggestive pretrial procedure.  By this
challenge to the admissibility of Sergeant Rhodes=s
in-court identification, appellant has to prove (1) that the out-of-court
identification procedure was impermissibly suggestive and (2) that the
suggestive procedure gave rise to a very substantial likelihood of irreparable
misidentification.  Barley v. State,
906 S.W.2d 27, 33 (Tex. Crim. App. 1995). 
The second element directly implicates appellant=s
due process rights.  Simmons v. United States, 390 U.S. 377, 384
(1968).  If appellant makes this showing,
the in-court identification was inadmissible unless the State proved by clear
and convincing evidence that the identification was of Aindependent
origin.@  United
 States v. Wade, 388 U.S. 218, 240 (1967).  Reliability is the linchpin in determining
the admissibility of identification testimony. 
Manson v. Brathwaite, 432 U.S. 98, 114 (1977).  

Appellant has satisfied his burden as to the first
element.  The use of a lone photograph,
without any of the traditional safeguards of a lineup or a photographic array,
is inherently suspect and has been uniformly condemned by courts.  Stovall v. Denno, 388 U.S. 293, 302
(1967); Loserth v. State, 985 S.W.2d 536, 543 (Tex. App.CSan Antonio 1998, pet. ref=d). 
Having determined that Sergeant Rhodes=s
viewing of a single photograph was an impermissibly suggestive procedure, we
next consider whether appellant has established that the procedure gave rise to
a very substantial likelihood of irreparable misidentification.  Photographic identification of an accused
prior to trial does not automatically taint an in-court identification.  Ward v. State, 474 S.W.2d 471, 475
(Tex. Crim. App. 1971).  Unless it is
shown by clear and convincing evidence that the witness=s
identification was irreparably tainted, a conviction will not be reversed on
that ground. Herrera v. State, 682 S.W.2d 313, 318 (Tex. Crim. App.
1984).








The United States Supreme Court in Brathwaite
and in Neil v. Biggers, 409 U.S. 188, 199 (1972), held that, even if an
identification procedure is suggestive and unnecessary, the admission of
identification testimony does not violate due process so long as the
identification possesses sufficient aspects of reliability.  Emphasizing that the totality of the
circumstances must be reviewed, the Court set forth five nonexclusive factors
to be considered: (1) the opportunity of the witness to view the criminal at
the time of the crime; (2) the witness=s
degree of attention; (3) the accuracy of the witness=s
prior description of the criminal; (4) the level of certainty demonstrated by
the witness at the confrontation; and (5) the length of time between the crime
and the confrontation.    

The facts in this case are similar to those in Brathwaite.  In Brathwaite, a trained undercover
state police officer purchased heroin from a seller through the open doorway of
an apartment while standing for several minutes within two feet of the seller
in a hallway illuminated by natural light. 
The undercover officer described the seller to another police officer
who, suspecting from the description that the defendant might be the seller,
left a police photograph of the defendant at the office of the undercover
officer.  Two days later, the undercover
officer identified the picture as the defendant.  The Court held that, under the totality of
the circumstances, there did not exist a very substantial likelihood of
irreparable misidentification.  The
observer was a trained police officer who had a sufficient opportunity to view
the suspect, accurately described him, positively identified the defendant=s photograph, and made the photograph
identification only two days after the crime.

Sergeant Rhodes had two opportunities to view
appellant from two or three feet away. 
Sergeant Rhodes was a trained undercover officer who could be expected
to pay scrupulous attention to detail, for he knew that subsequently he would
have to find and arrest his seller. 
Sergeant Rhodes=s
description of appellant prior to seeing the photograph was sufficient to
enable Sergeant Garcia to have appellant stopped a few days later.  Sergeant Rhodes was adamant in his testimony
during trial that appellant was the person who sold cocaine to him on two
occasions.  Finally, the photographic
identification took place only a few days after the cocaine purchases. As in Brathwaite,
we do not have a passage of weeks or months between the crime and the viewing
of the photograph.  See Brathwaite,
432 U.S.
at 116.








The State in this case demonstrated by clear and
convincing evidence that the identification of appellant was of independent
origin (Sergeant Rhodes=s
observation of defendant during the two sales). 
See Spencer v. State, 466 S.W.2d 749, 753 (Tex. Crim. App.
1971).  Although appellant has relied
heavily in his argument that Sergeant Rhodes failed to mention appellant=s teardrop tattoo in his reports, that
omission went to the weight of Sergeant Rhodes=s
testimony, not its admissibility.  Garza
v. State, 633 S.W.2d 508, 513 (Tex. Crim. App. 1981).  The impermissible procedure did not give rise
to a very substantial likelihood of irreparable misidentification.  Appellant=s
second issue is overruled.  Appellant=s trial counsel was not ineffective for
not objecting to the stop or the method by which Sergeant Rhodes identified
appellant.

Legal and Factual Sufficiency of the Evidence

In appellant=s
third and fourth issues, appellant asserts that the evidence was legally and
factually insufficient to support the convictions.  Although appellant=s
sufficiency arguments are primarily based on his contention that the in-court
identification of appellant by the undercover officer was due to an
impermissible pretrial procedure, with which we have disagreed, we nevertheless
will address the third and fourth issues. 

In order to determine if the evidence is legally
sufficient, we must review all of the evidence in the light most favorable to
the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307 (1979); Jackson v. State,17 S.W.3d 664 (Tex. Crim. App.
2000).  To determine if the evidence is
factually sufficient, the appellate court reviews all of the evidence in a
neutral light.  Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga v.
State, 144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State, 23
S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404,
407-08 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996).  Then, the
reviewing court determines whether the evidence supporting the verdict is so
weak that the verdict is clearly wrong and manifestly unjust or whether the
verdict is against the great weight and preponderance of the conflicting
evidence.  Watson, 204 S.W.3d at
414-15;  Johnson, 23 S.W.3d at
10-11.








Sergeant Rhodes was firm in his in-court
identification of appellant as the one who sold him cocaine on two
occasions.  There are other factors
pointing to appellant as the one who drove the Ford F150 on September 4 and the
white Chevrolet pickup on September 6. 
Both pickups were known by Sergeant Garcia to belong to the Aguirres,
and there was testimony that the Chevrolet pickup was registered in the name of
Larry Aguirre.  Appellant admitted, and
the evidence showed, that he was driving the Chevrolet pickup on October 23
when appellant was the subject of a traffic violation.  Appellant obviously was driving an Aguirre
pickup when he was stopped in September and Trooper Brewster obtained his
driver=s
license.  Appellant did not own a vehicle
and freely admitted that he drove the Aguirre pickups when he needed a
vehicle.  The fact that an Aguirre pickup
was involved in both cocaine buys indicates that either an Aguirre or someone
closely associated with the Aguirres was driving the pickups.  Appellant was married to a sister of an
Aguirre, and his own sister was married to Larry Aguirre, the owner of the
Chevrolet pickup.

The evidence was legally and factually sufficient
to support the conviction of appellant for both offenses.  We overrule appellant=s
third and fourth issues.

Prior Offenses Dismissed Under Section 12.45

In his first issue, appellant argues that the
trial court erred in admitting impeachment evidence of prior offenses that
appellant had pleaded guilty to under Section 12.45 of the Penal Code.  The offenses had been considered by another
court in connection with the punishment of appellant for an earlier felony
conviction.  In this case, appellant does
not object to the use of the earlier felony conviction for illegal investment
under Tex. Health & Safety Code Ann.
' 481.126 (Vernon Supp. 2006).  Appellant=s
objection is that the dismissed offenses under Section 12.45 B possession of 400 grams or more of
cocaine and possession of five pounds or less but more than four ounces of
marihuana B should
not have been used to impeach him because they were not final convictions as
required by Tex. R. Evid. 609.  Rule 609 provides in relevant part:

(a) General Rule. 
For the purpose of attacking the credibility of a witness, evidence that
the witness has been convicted of a crime shall be admitted if elicited from
the witness or established by public record but only if the crime was a felony
or involved moral turpitude, regardless of punishment, and the court determines
that the probative value of admitting this evidence outweighs its prejudicial
effect to a party.

 

The State argues that appellant failed to object
timely, that the two dismissed offenses could be considered as part of the
felony conviction judgment of illegal investment, and that the two dismissed
offenses could be considered for impeachment purposes under Perea v. State,
870 S.W.2d 314, 318 (Tex. App.CTyler
1994, no pet.).








To preserve a complaint for appellate review, a
defendant must make a timely, specific objection to the trial court.  Tex.
R. App. P. 33.1(a); Rhoades v. State, 934 S.W.2d 113, 119 (Tex.
Crim. App. 1996).  A complaining party
must object at the earliest possible moment and obtain an adverse ruling.  Dixon
v. State, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998).  The sequence is to object when it is
possible, to request an instruction to disregard if the prejudicial event has
occurred, and to move for a mistrial if a party thinks an instruction to
disregard is not sufficient.  The
essential requirement to preserve complaints for appellate review is a timely,
specific request that the trial court refuses. 
Young v. State, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004); Fuller v. State,
827 S.W.2d 919, 926 (Tex. Crim. App. 1992). 
In addition, with two exceptions, a party must continue to object each
time inadmissible evidence is offered. 
The two exceptions are that counsel must either (1) obtain a running
objection or (2) request a hearing outside the presence of the jury.  Tex.
R. Evid. 103(a)(1); Geuder v. State, 115 S.W.3d 11, 13 (Tex. Crim. App.
2003).  In this case, counsel for
appellant requested a hearing outside the presence of the jury.

Prior to the jury returning and appellant taking
the stand to testify, the trial court held a hearing to determine the
admissibility for impeachment purposes of the two prior offenses that had been
considered in the punishment for appellant=s
prior felony offense.  The record
reflects that the State was presenting to the trial court several documents B a certified copy of the judgment and
sentence in the earlier illegal investment case, the State=s motion to dismiss the two counts
charging possession of cocaine and possession of marihuana, and the order B that were related to appellant=s 
illegal investment offense.[1]  The State urged that the two possession
offenses were admissible as part of the earlier judgment and that, in any
event, they were admissible for impeachment under Perea.  Appellant argued that the two offenses were
not convictions as required by Rule 609, that the State was going into
circumstances behind the illegal investment judgment, and that those
circumstances (the two Section 12.45 offenses) were prejudicial and not relevant
to appellant=s
credibility.  The trial court overruled
appellant=s
objections and held that the Adocuments@ were admissible.








After appellant completed his direct testimony,
the prosecutor began his cross-examination by confirming that appellant had
pleaded guilty to the offense of illegal investment in 1997.  He then asked appellant about the second
count in that indictment, possession of cocaine, and the third count,
possession of marihuana.  Appellant
acknowledged that he had admitted his guilt to those two charges and that they
were taken into account by the trial court in sentencing him for the offense of
illegal investment.  It was not until the
prosecutor offered the earlier judgment into evidence that appellant=s attorney objected to the documents Afor the reasons previously stated.@ 
The trial court overruled his objection. 
On appeal, the State argues that appellant waived his objection by the
failure to object to the State=s
cross-examination questions.  Geuder
involved a similar failure to object when the prosecutor inquired into Geuder=s prior convictions, and the Court of
Criminal Appeals held that the impeachment issue was not waived or forfeited.  Geuder, 115 S.W.3d at 13.  The hearing outside the presence of the jury
preserved appellant=s
complaint.

The State again urges that the two possession
offenses were admissible as part of the earlier judgment of conviction of
illegal investment.  Although a judgment
might be considered as including unadjudicated offenses that were taken into
account under Section 12.45, the judgment of appellant=s
conviction of illegal investment fails to mention either of the two possession
offenses that the State and appellant agree were considered under Section
12.45.  The judgment refers to appellant=s indictment for the offense of illegal
investment and his plea bargain, but neither the indictment nor the plea
bargain is part of the record.  The
judgment only states:  ASec. 12.45 P.C. Counts Two and Three.@ Thus, the judgment does not
demonstrate that the two possession cases were part of the illegal investment
conviction.  That leaves the State=s argument that the two dismissed
offenses could be considered for impeachment purposes under Perea even
if they were not part of the illegal investment conviction.

Rule 609 states that Aevidence
that the witness has been convicted of a crime shall be admitted if elicited
from [him] or established by public record.@  Even though the judgment does not provide
evidence of the two possession offenses considered under Section 12.45,
appellant=s
testimony elicited on cross-examination by the State does.  The court in Perea concluded that a
witness in a criminal case may be impeached by evidence of offenses taken into
consideration in sentencing under Section 12.45 because prosecution of those
offenses is then barred under Section 12.45(c). 
Thus, offenses considered under Section 12.45 are treated in a sense as
if they were the subject of convictions.








Although the reasoning in Perea is
persuasive, we decline to follow Perea under the facts of this
case.  The reasoning in Travis County
Attorney v. J.S.H., 37 S.W.3d 163 (Tex. App.CAustin
2001, no pet.) (criticizing Perea), is more persuasive as a matter of
statutory interpretation.  Offenses
considered under Section 12.45 do not meet the requirement of Rule 609 that a
witness had been Aconvicted@ of those crimes.  Under Section 12.45, a defendant may, with
permission of the State, admit guilt of one or more unadjudicated offenses
possibly enhancing his sentence for the adjudicated offense (illegal investment
in this case).  Section 12.45 also
provides that prosecution is barred for those unadjudicated offenses (the two
possession offenses) taken into consideration in the sentencing of the
adjudicated offense.  However, Section
12.45 deals with unadjudicated offenses, and the Court of Criminal Appeals has
emphasized that there must be an Aadjudication
of guilt@ before
there can be a Aconviction.@ 
McNew v. State, 608 S.W.2d 166, 172 (Tex. Crim. App. 1978).  Thus, we agree with J.S.H., 37 S.W.3d
163 that the term Aconviction@ in 
a statute requires an adjudication of guilt unless the statute provides
otherwise.  Rule 609 refers to
convictions for use as impeachment evidence. 
Appellant was not convicted of the two possession offenses.

We note also that Rule 609 required the trial
court to determine whether the probative value of admitting the two possession
offenses as impeachment evidence outweighed its prejudicial effect to
appellant.  The record does not reflect
that the trial court made this determination. 
The trial court erred in allowing appellant to be impeached by the two
possession offenses.

Having found that the trial court erred, we must
determine whether appellant was harmed by the admission of evidence concerning
the two possession offenses.  In general,
error in the admission of evidence will warrant reversal under Tex. R. App. P. 44.2(b) only if the
erroneous admission affected the defendant=s
substantial rights by exerting Aa
substantial and injurious effect or influence in determining the jury=s verdict.@  King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997).  As stated in Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998):

A criminal conviction should not be overturned for
non-constitutional error if the appellate court, after examining the record as
a whole, has fair assurance that the error did not influence the jury, or had
but a slight effect.

 

We believe that the erroneous admission affected
appellant=s
substantial rights.  During
cross-examination of appellant, the State asked a number of questions about the
illegal investment conviction and the offenses of possession of cocaine and
possession of marihuana.  Appellant
acknowledged that he had admitted to the two possession offenses as part of his
plea bargain. Appellant also admitted that he was released on parole in April
2001, but was taken back into custody in 2002. 
In closing argument, the State emphasized the impeachment evidence:








We
have a Defendant who has a felony conviction, and you don=t have to believe him.  He has a conviction of illegal
investment.  He admitted that he
committed two other charges that were dismissed, but he admitted that he did
them, and one of those was possession of over 400 grams of cocaine.  And [that is what] he [is] accused of selling
while he=s out on
parole?  I mean, this guy is out on
parole, being supervised, you know, and he=s
out here selling stuff while he=s
on parole.

 

The identification of appellant by Sergeant Rhodes
was key to the State=s
case.  The defense=s
theory was that Sergeant Rhodes was mistaken as to the identity of the actual
seller.  Crucial to that defense was the
credibility of appellant in his testimony. 
The State obviously realized the power of tying the 400 grams of cocaine
with the delivery of cocaine in this case. 
We cannot say that the trial court=s
error had a slight effect.  Appellant=s first issue is sustained.

This Court=s
Ruling

We reverse and remand for a new trial. 

 

TERRY McCALL

JUSTICE

 

July 19, 2007

Publish.  See Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.











[1]Only the certified copy of the judgment was later
introduced into evidence.  The record
does not contain the State=s motion to dismiss the two possession counts or the
order dismissing them.