### Ex parte Samuel OKERE.

### No. 2–00–496–CR.

Court of Appeals of Texas, Fort Worth.

Aug. 31, 2001.

---

Jack Beech, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney; Charles Mallin, Assistant Criminal District Attorney and Chief of the Appellate Section; Tanya S. Dohoney and Fred Cummings, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

Panel A: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

## OPINION

WALKER, Justice.

Applicant, Samuel Okere ("Okere"), appeals the denial of his application for a writ of habeas corpus. We will affirm.

## PROCEDURAL HISTORY

A jury convicted Okere of misdemeanor assault. He entered into an agreement with the State concerning sentencing. The sentencing agreement included a $500 fine, court costs, and a one-year sentence, probated for two years. The State subsequently filed a motion to revoke Okere's probation.

A warrant for Okere's arrest was issued based on the State's motion to revoke, and Okere was arrested. He was later released on bail pending a hearing on the State's motion to revoke probation. Okere then filed an application for a writ of habeas corpus and a first amended application

for a writ of habeas corpus, claiming ineffective assistance of counsel. Following a hearing on the first amended application for writ of habeas corpus, the trial court denied the writ. Okere appeals that denial.

## APPELLATE COURT JURISDICTION

In both of his applications to the trial court and in his appeal to this court, Okere bases his right to relief on articles 11.01 and 11.09 of the code of criminal procedure.[1] TEX.CODE CRIM. PROC. ANN. arts. 11.01, 11.09 (Vernon 1977). Article 11.09 authorizes writs of habeas corpus in misdemeanor cases. Id. art. 11.09. The State contends that we lack jurisdiction over Okere's appeal because: (1) the trial court never issued a writ of habeas corpus; and (2) Okere was not "confined."

### 1. Issuance of writ of habeas corpus.

■ The State argues that unless the trial court issues a writ of habeas corpus, we lack jurisdiction over a trial court's denial of habeas relief. A writ of habeas corpus is an order from a judge commanding a party, who is alleged to be restraining the applicant in some way, to appear before the court with the object of the alleged restraint and explain the reasons for the restraint. Id. art. 11.01; Ex parte Hargett, 819 S.W.2d 866, 868 (Tex.Crim. App.1991). The well-established rule of law is that when an application for habeas corpus alleging unlawful restraint is presented to a judge who refuses to issue a writ commanding the person having the applicant in custody to produce him for a determination of the allegations in the application, no appeal lies. Ex parte Hargett, 819 S.W.2d at 868; Ex parte Johnson, 561 S.W.2d 841, 842 (Tex.Crim.App.1978)

---

1. All references herein to articles are to the Texas Code of Criminal Procedure unless not-   ed otherwise.

(applying principle to article 11.09 writs); *Ex parte Reese*, 666 S.W.2d 675, 677 (Tex. App.—Fort Worth 1984, pet. ref'd) (applying principle to article 11.07 writs). When the trial judge denies the writ, a petitioner's remedy is to "present his application to another judge having jurisdiction." *Ex parte Johnson*, 561 S.W.2d at 842; *see also Ex parte Hargett*, 819 S.W.2d at 868.

■ The trial court may conduct a limited, preliminary hearing to determine whether to issue a writ of habeas corpus. *Ex parte Hargett*, 819 S.W.2d at 868; *Ex parte Reese*, 666 S.W.2d at 677. After such hearing, if the trial court refuses to issue the writ, no appeal lies. *Ex parte Reese*, 666 S.W.2d at 677.

■ Conversely, when a hearing is held on the merits of the applicant's claim for relief and the trial court rules on the merits of that claim, the losing party may appeal regardless of whether the trial court issued a writ of habeas corpus. *Ex parte Hargett*, 819 S.W.2d at 868; *Ex parte Reese*, 666 S.W.2d at 677. The court of criminal appeals explained this concept in *Ex parte Hargett:*

It is well settled that no appeal can be had from a refusal to issue or grant a writ of habeas corpus *even after a hearing.* However, the portion of that statement of law which we have emphasized can be confusing so, we will clarify it. In the cases which rely on that statement of law, the "hearing" which is being referred to is one which a court might hold in order to determine whether there is sufficient cause for the writ to be issued or whether the merits of the claim should be addressed. That type of hearing is not the same as one which is held to ultimately resolve the merits of an applicant's claim. **When a hearing is held on the merits of an applicant's claim and the court subsequently rules on the merits of that claim, the losing party may appeal.**

819 S.W.2d at 867 (bold emphasis added) (footnote omitted). The court of criminal appeals held that the appellate court erred in determining that it lacked jurisdiction simply because the trial court did not issue a writ of habeas corpus:

The Court of Appeals correctly ruled that the trial court did not issue a writ of habeas corpus. However, it erred in concluding that it had no jurisdiction to hear the appeal from the trial court's order denying relief. This is not a case where the district court simply refused to hear the application as presented. Here, the court went beyond merely deciding not to issue the writ of habeas corpus. The court, in this instance, undertook to rule on the merits of the application.

It is important to recognize that there is a distinction between the issuance of a writ of habeas corpus and the granting of relief on the claims set forth in an application for that writ. The trial court in the instant case did not issue the requested writ of habeas corpus. However, he did not dismiss the application either. Instead, the court undertook to rule on the merits of applicant's claim and hence, the court of appeals has jurisdiction over applicant's appeal.

*Id.* at 869 (footnote omitted). Therefore, under *Ex parte Hargett*, the crucial question is not whether the trial court did or did not issue the writ, but whether the court did or did not consider and resolve the merits of the petition. *Ex parte Gonzales*, 12 S.W.3d 913, 914 (Tex.App.—Austin 2000, pet. ref'd); *Ex parte Barnes*, 959 S.W.2d 313, 315 n. 3 (Tex.App.—Fort Worth 1997, pet. dism'd, improvidently granted); *see also Ex parte Bowers*, 36 S.W.3d 926, 927 (Tex.App.—Dallas 2001, pet. ref'd) (holding appellate court lacked jurisdiction because record did not reflect trial court considered merits of habeas ap-

plication). Thus, we possess jurisdiction over Okere's appeal if the trial court conducted a hearing addressing the merits of his first amended application for writ of habeas corpus. *Ex parte Gonzales,* 12 S.W.3d at 914.

■ To determine whether the trial court considered and ruled upon the merits of Okere's application, we examine the record. The record reflects that the trial court conducted a November 10, 2000 hearing on the application. The order setting the hearing date contains a handwritten notation by the judge, "writ will be decided Nov. 10, 2000." Okere appeared and testified at the November 10, 2000 hearing. The State cross-examined him, specifically concerning his failure to subpoena his trial counsel, whom he claimed to be ineffective, to the hearing. Okere offered the reporter's record of his trial into evidence in support of the ineffective assistance of counsel claims set forth in his first amended application for a writ of habeas corpus. The State argued in closing argument that Okere had not met his burden of establishing ineffective assistance of counsel under *Strickland. See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

At the conclusion of the hearing, the trial court noted and read into the record the fact that at Okere's trial, after the jury returned a guilty verdict, Okere reached an agreement with the State concerning punishment. The trial court read the following exchange from the punishment phase of Okere's trial into the record at the November 10, 2000 hearing:

THE COURT: [Defense counsel] I understand that you have worked out an agreed punishment with the District Attorney's office; is that correct?

[DEFENSE COUNSEL]: That's correct.

THE COURT: And that's for a $500 fine, court costs, one year and probated for two years, several counseling programs, 150 hours of community service, and a waiver of appeal; is that correct?

[DEFENSE COUNSEL]: That's correct, Your Honor.

The court then asked Okere if he had understood and agreed to the exchange just read into the record from the punishment phase of his trial. Okere said he had, and the trial court stated, "This writ is denied. A motion for Revocation or Adjudication will be set. You have a right [to] appeal to the Second Court of Appeals."

Based on the foregoing, we conclude that the trial court considered and resolved the merits of Okere's application for writ of habeas corpus. We hold that the trial court's failure to issue a writ of habeas corpus in this case does not preclude our exercise of jurisdiction over Okere's appeal.

### 2. Confinement requirement.

Next, the State asserts that we lack jurisdiction over Okere's appeal because he was not "confined" as required to show himself entitled to an article 11.09 writ of habeas corpus. The State argues that "confinement" as utilized in article 11.09 means "in custody" and contends that because Okere was on probation at the time he filed his writ, he was not "in custody." The issue of whether or not custody is a prerequisite to habeas relief under article 11.09 has not been directly addressed by the court of criminal appeals or by this court.

■ We begin by examining the pertinent statutory provisions. Article 11.09 is titled, "Applicant charged with misdemeanor." TEX.CODE CRIM. PROC. ANN. art. 11.09. It provides:

If a person is *confined on a charge of misdemeanor,* he may apply to the county judge of the county in which the misdemeanor is charged to have been committed, or if there be no county judge in said county, then to the county judge whose residence is nearest to the courthouse of the county in which the applicant is held in custody.

*Id.* (emphasis added). Article 11.21 is titled, "Constructive custody." *Id.* art. 11.21. It provides that the word "confined" refers "not only to the actual, corporeal and forcible detention of a person, but likewise *to any coercive measures* by threats, menaces or the fear of injury, *whereby one person exercises a control over the person of another, and detains him within certain limits.*" *Id.* (emphasis added). A defendant on parole is in constructive custody as defined by article 11.21. *Hoang v. State,* 872 S.W.2d 694, 697 (Tex.Crim.App.1993), *cert. denied,* 513 U.S. 863, 115 S.Ct. 177, 130 L.Ed.2d 112 (1994); *Ex parte Canada,* 754 S.W.2d 660, 663 (Tex.Crim.App.1988) (both recognizing applicant on parole is "confined" under article 11.21).

■ Here, Okere was on community supervision, i.e., probation, at the time he filed his application for habeas relief. Article 42.12, section 11 sets forth the basic conditions of community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11 (Vernon Supp.2001). One possible condition of community supervision is the requirement that the defendant "[r]emain within a specified place." *Id.* art. 42.12, § 11(a)(7). Okere's "Judgment and Sentence" listing the terms of his community supervision requires that Okere "remain within the limits of Tarrant County, Texas, unless given permission by the Supervision Officer to leave therefrom." Applying article 11.21's definition, we hold that Okere was "confined" because he was detained within certain limits. *Id.* art. 11.21. Okere was therefore "confined" as required by article

11.09 in order to show himself entitled to seek habeas corpus relief pursuant to that statutory provision.

The State argues that Okere's probation is not confinement and cites *Ex parte Renier,* 734 S.W.2d 349, 351 (Tex.Crim.App. 1987), *Rodriguez v. Court of Appeals,* 769 S.W.2d 554, 557 (Tex.Crim.App.1989), and *Dahesh v. State,* 51 S.W.3d 300, 301–303 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd). These cases are distinguishable from the present facts.

In *Ex parte Renier,* the court of criminal appeals held that an applicant attempting to invoke the court of criminal appeals' original habeas jurisdiction under former article 11.07 must be "confined" and interpreted confined to mean "in custody." 734 S.W.2d at 351. The court reached this result by reviewing the language of article 11.07:

Secondly, when the application is made after conviction Article 11.07 is concerned with "confinement." Upon examination of such an application the judge of the convicting court has a duty to decide whether there are controverted, unresolved facts "material to the legality of the applicant's *confinement.*" After the record is reviewed here, this Court "shall enter its judgment remanding the petitioner to *custody* or ordering his *release,* as the law and facts may justify." Finally the procedure prescribed "shall be exclusive and any other procedure shall be void and of no force and effect in *discharging the prisoner.*"

*Id.* (citations omitted). Based on article 11.07's use of the terms confinement, custody, release, discharge, and prisoner, the court concluded that an article 11.07 application for writ of habeas corpus returnable directly to the court of criminal appeals was available only when the applicant was a prisoner in actual, physical custody. *Id.* Because of this express language in article

11.07, the court did not look to or utilize article 11.21's definition of confinement.

*Ex parte Renier* is not controlling in the present case for two reasons. First, *Ex parte Renier* dealt with an article 11.07 application for writ of habeas corpus following a final felony conviction. Article 11.07, as outlined by the *Renier* court, contained language making this writ available only to an applicant "in custody." Here, Okere seeks relief pursuant to article 11.09. Article 11.09 does not contain the words custody, release, discharge, or prisoner. Rather article 11.09 is available to any person *confined* on a charge of misdemeanor. Tex.Code Crim. Proc. Ann. art. 11.09. Because article 11.09, as opposed to article 11.07, contains no language indicating an intent to give the term confined a different meaning than the statutory definition provided in article 11.21, we decline to do so.

*Ex parte Renier* is not controlling for a second reason. Article 11.07 has been amended to eliminate *Ex parte Renier's* construction of "confinement" as "in custody." Tex.Code Crim. Proc. Ann. art. 11.07, § 3(c) (Vernon Supp.2001). In 1995, article 11.07 was amended to specifically provide that "[c]onfinement means confinement for any offense or any collateral consequence resulting from the conviction that is the basis of the instant habeas corpus." Act of May 24, 1995, 74th Leg., R.S., ch. 319, § 5, sec. 3(c), 1995 Tex. Gen. Laws 2764, 2771 (amended 1999) (current version at Tex.Code Crim. Proc. Ann. art. 11.07, § 3(c)). Thus, *Ex parte Renier's* "in custody" definition of "confinement" is no longer viable, even for an applicant seeking relief under article 11.07.[2]

*Rodriguez* also supports our conclusion that Okere was confined for purposes of

article 11.09. 769 S.W.2d at 557. In *Rodriguez,* the court of criminal appeals held:

> Although a post "final" conviction writ of habeas corpus pursuant to Art. 11.07, supra, mandates that the applicant be "in custody" before the writ is entertainable by this Court ... the writs of habeas corpus under Art. 5, § 8 of the Texas Constitution and under Art. 11.05, V.A.C.C.P., and Art. 11.07, § 1, V.A.C.C.P., are not so limited.

*Id.* at 558. Thus, the court of criminal appeals in *Rodriguez* implied that the "in custody" requirement was limited to post-felony-conviction article 11.07 writs returnable directly to the court of criminal appeals. *Rodriguez* does not indicate or imply that an applicant seeking habeas relief pursuant to article 11.09 must be "in custody" as opposed to merely meeting the statutory definition of "confinement."

Finally, *Dahesh* is likewise not applicable to the present facts. Dahesh completed his probation and paid his fine nineteen years before filing his application seeking habeas relief under article 11.09. *Dahesh,* 51 S.W.3d at 301–303. Thus, the court of appeals held the applicant was neither confined nor restrained pursuant to any state action related to the misdemeanor conviction he sought to set aside. *Id.* Here, Okere, unlike Dahesh, was "confined" as that term is defined in article 11.21.

We recognize that the Houston Fourteenth Court of Appeals and the Waco Court of Appeals have determined that the term "confined" in article 11.09 requires actual physical confinement. *Ex parte Villalpando,* 35 S.W.3d 193, 194 (Tex.App.—Waco 2000, pet. ref'd); *Ex parte Bone,* 25 S.W.3d 728, 729–30 (Tex.App.—Waco 2000, no pet.) (both holding that applicant who has fully served his misdemeanor sentence

---

**2.** When the Legislature in 1995 specifically defined "confinement" in article 11.07, it did not commensurately amend article 11.09 to provide a broader definition of confinement, and it did not amend article 11.21's definition of confinement.

is not confined and is not entitled to relief under article 11.09); *Dahesh*, 51 S.W.3d at 301–303; *Ex parte Oyedo*, 939 S.W.2d 785, 786 (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd) (both holding that application for habeas corpus relief will not lie under article 11.09 unless the applicant is confined pursuant to commitment for misdemeanor conviction). The Houston First Court of Appeals, however, has held that an applicant for an article 11.09 writ who had served his misdemeanor sentence and paid his fine was nonetheless confined because he was denied entry into the military service as a result of his conviction. *Ex parte Davis*, 748 S.W.2d 555, 557 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd).

The first case to construe the term "confinement" in article 11.09 as requiring physical detention was *Ex parte Oyedo*, 939 S.W.2d at 786. *Ex parte Oyedo* relied solely on *Ex parte Renier. Id.* The court held:

> While the case law set out above has established confinement as a requirement for a writ brought pursuant to article 11.07, our research has not uncovered a comparable decision holding that article 11.09 requires the applicant to be "confined" before habeas relief may be granted. Nevertheless, a plain reading of the provision suggests that one must be "confined on a charge of misdemeanor" before an application for habeas corpus may be made. Thus, just as with 11.07, we hold an application for habeas corpus relief will not lie under article 11.09 unless the applicant is "confined" pursuant to a commitment for a misdemeanor conviction. *Cf. Ex parte Renier*, 734 S.W.2d at 353.

*Id.* at 786. For the reasons discussed previously, we conclude that *Ex parte Renier*, involving an application for an article 11.07 non-death penalty, felony, post conviction writ, is inapplicable to an application for an article 11.09 writ. Additionally,

*Ex parte Oyedo* does not mention article 11.21's statutory definition of confinement. Thus, we decline to follow *Ex parte Oyedo*.

The other cases holding that "custody" is required to obtain article 11.09 habeas relief do not revisit the issue of whether custody is a prerequisite to an article 11.09 writ. *Ex parte Villalpando*, 35 S.W.3d at 194; *Ex parte Bone*, 25 S.W.3d at 729–30; *Dahesh*, 51 S.W.3d at 301–303. Rather, these cases simply cite *Ex parte Oyedo* for the proposition that an article 11.09 applicant must be confined pursuant to a commitment for a misdemeanor conviction. *Ex parte Villalpando*, 35 S.W.3d at 194; *Ex parte Bone*, 25 S.W.3d at 729–30; *Dahesh*, 51 S.W.3d at 301–303. For the same reasons we decline to follow *Ex parte Oyedo*, we do not follow *Ex parte Villalpando*, *Ex parte Bone*, or *Dahesh*.

We hold that Okere was "confined" as that term is defined in article 11.21 and that he was therefore entitled to seek habeas corpus relief pursuant to article 11.09. We now turn to the merits of Okere's appeal.

## STANDARD OF REVIEW

In reviewing a trial judge's decision to grant or deny relief on a writ of habeas corpus, we afford almost total deference to a trial judge's determination of the historical facts supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. *See Ex parte Martin*, 6 S.W.3d 524, 526 (Tex.Crim.App.1999); *State v. Nkwocha*, 31 S.W.3d 817, 820 (Tex. App.—Dallas 2000, no pet.). We afford the same amount of deference to the trial judge's rulings on "applications of law to fact questions," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Nkwocha*, 31 S.W.3d at 820. However, if the resolution of those ultimate questions turns on an application of legal standards, we review the determination de novo. *Id.*

## INEFFECTIVE ASSISTANCE
## OF COUNSEL

In two issues, Okere contends that he was deprived of effective assistance of counsel and due process of law. Okere claims that his trial counsel failed: (1) to communicate with him; (2) to investigate the facts of the case; (3) to properly present the case to the jury; (4) to object to improper arguments made by the prosecutor; and (5) to object to and preserve error on the prosecutor's presentation of certain evidence.[3]

■ To establish ineffective assistance of counsel, an applicant must satisfy a well-established two prong test. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999). First, applicant must show that his counsel's performance was deficient; second, applicant must show the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *see also Hernandez v. State*, 988 S.W.2d 770, 770 (Tex.Crim.App.1999).

■ In evaluating the effectiveness of counsel under the first prong, the totality of the representation and the particular circumstances of each case are reviewed. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *Strickland*, 466 U.S. at 688–89, 104 S.Ct. at 2065. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. Scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

■ The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, *i.e.*, a trial whose result is reliable. *Id.* at 687, 104 S.Ct. at 2064. In other words, an applicant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of the inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Id.* at 697, 104 S.Ct. at 2070.

■ Generally, a writ of habeas corpus is the preferred vehicle for ineffective assistance claims, as the record on direct appeal is often insufficient to reflect the failings of trial counsel. *Thompson*, 9 S.W.3d at 813–14. The rationale underly-

---

**3.** Specifically, Okere alleges on appeal that his trial counsel did not: give him notice of trial settings; discuss with him plea bargain offers; discuss litigation strategy, including defensive and evidentiary issues and the relative merits of trial and plea bargaining; make him aware of the status of his case; review medical records and photographs offered by the State even though they were available before trial; locate, meet with or subpoena available defense witnesses; discuss the facts of the case with him; inform him of his right to testify in his own defense; offer evidence of his good character and reputation; object to the prosecutor's arguments that bolstered the credibility of State's witnesses, gave the prosecutor's opinion on the credibility of the victim, and were outside the record; object to the introduction of medical records; or object to hearsay statements made by a State witness.

ing this preference for collateral attacks is well reasoned:

> Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation. In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel.

*Id.* (citing *Jackson v. State,* 973 S.W.2d 954, 957 (Tex.Crim.App.1998) (footnote omitted)). The court of criminal appeals has repeatedly explained that the writ of habeas corpus is the appropriate vehicle to raise ineffective assistance of counsel claims because many such claims involve omissions, rather than commissions readily ascertainable on the face of the trial record, and the writ of habeas corpus affords the applicant the opportunity to develop, through testimony, a thorough and detailed record of the alleged ineffectiveness. *Id.; Jackson,* 973 S.W.2d at 957; *Ex parte Duffy,* 607 S.W.2d 507, 513 (Tex.Crim.App. 1980).

█ Okere bore the burden at the habeas corpus hearing to prove by a preponderance of the evidence that his allegations of ineffective assistance of counsel met both prongs of the *Strickland* test. *See Ex parte Lafon,* 977 S.W.2d 865, 867 (Tex. App.—Dallas 1998, no pet.) (holding applicant bears burden of proof in habeas corpus proceeding). Okere was afforded the opportunity at the habeas corpus hearing to develop a record demonstrating his alleged ineffective assistance of counsel claims under the two prong *Strickland* test. At the hearing, however, Okere was the sole witness. He testified that he met with his trial attorney only one time independent of court appearances and that the two did not discuss the facts of the case at that meeting. Okere claimed that his

counsel did nothing to ascertain the facts of the case.

Okere also testified that he provided his attorney with the names of several witnesses, one of whom saw the altercation for which he was tried, but that his counsel failed to contact these witnesses or subpoena them to trial. He also testified that his counsel failed to inform him of the possibility of plea bargaining and failed to communicate specific plea offers from the State to him. He claimed that he was not informed of at least one scheduled court appearance, and was surprised to find that what he thought to be a hearing was actually his trial. According to Okere, his counsel refused to present any defense at trial and refused to allow him to testify, in direct contravention of his expressed wishes. Finally, Okere testified that he was given no choice but to sign an agreement on sentencing that waived his right to appeal, even though he told his counsel that he wanted to appeal the verdict.

█ Thus, the ineffective assistance of counsel claims presented by Okere on appeal and at the writ hearing all involve omissions, rather than commissions. Yet, Okere failed to subpoena any of the attorneys involved in the preparation and presentation of his case to testify at the writ hearing. Because Okere himself was the only witness, the record before us contains no explanation for trial counsel's actions. "Consistently with *Strickland,* we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that [counsel] 'made all significant decisions in the exercise of reasonable professional judgment.'" *Delrio v. State,* 840 S.W.2d 443, 447 (Tex.Crim.App.1992) (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066); *see also Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994) (reaffirming same proposition). Okere's ineffective assistance of counsel claims in this

habeas corpus proceeding fail for the same reason that most ineffective assistance of counsel claims in direct appeals fail, because the record is devoid of evidence regarding trial counsel's reasons or strategy concerning the challenged actions. By not seeking those explanations, Okere has failed to overcome the presumption that the challenged actions were sound trial strategy. *See Thompson,* 9 S.W.3d at 813–14. Because Okere failed to meet his burden of proof under *Strickland,* the trial court did not abuse its discretion in denying Okere habeas relief.

Okere's other point, claiming that he was denied due process of law through the conduct of counsel, also fails because he has not established that his trial counsel's assistance was, in fact, ineffective. We overrule both of Okere's points.

### CONCLUSION

Having determined that we possess jurisdiction over Okere's appeal and that Okere was confined as required by article 11.09, and having overruled Okere's issues, we affirm the trial court's judgment.