COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

NOS.         2-08-366-CR

2-08-367-CR

2-08-368-CR

2-08-369-CR

2-08-370-CR

2-08-371-CR

 

EX PARTE
JEFFREY HOLLIDAY 

KARLSON

 

 

                                              ------------

 

         FROM COUNTY
CRIMINAL COURT NO. 1 OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                            Introduction

Appellant Jeffrey Holliday Karlson appeals the
trial court=s denials of his applications
for writs of habeas corpus.  We dismiss
two of these six appeals for want of jurisdiction; we affirm the trial court=s orders
in the remaining cases.








                                        Background
Facts

In 2004, the State charged appellant with six
crimes, including two assault offenses,[1]
two drug offenses,[2]
interference with an emergency call,[3]
and unlawful restraint.[4]  Appellant missed court appearances and
forfeited bonds related to these charges in March and August 2004; officers
rearrested him as a result of both of these forfeitures.








In September 2004, while in custody, appellant
submitted letters to the Denton county and district clerks[5]
stating that he wanted to Afire
[his] current attorney,@ Carey Piel, because Piel
allegedly refused to visit appellant to discuss his cases, discussed cases with
and accepted payment from appellant=s father
without appellant=s permission, and had a Adefeatist
attitude@ aimed
at coercing appellant to accept a plea bargain. 
On the same day the county clerk filed appellant=s
letter, appellant (with the assistance of Piel) entered no contest pleas to the
two drug offenses, one of the assault offenses, and the unlawful restraint
charge.  The trial court found appellant
guilty of the four offenses and sentenced him to 180 days=
confinement on each offense; it suspended the sentences for twenty-four months
while it placed appellant on community supervision.








Based on his no contest pleas to those four
charges, appellant filed pleas in bar to prosecution of the two remaining
chargesCthe
January 2004 assault and the interference with the May 2004 emergency callCunder
section 12.45 of the penal code.  See Tex.
Penal Code Ann. ' 12.45 (Vernon 2003)
(stating that the trial court can take unadjudicated offenses into
consideration during punishment and that after doing so, with the State=s
consent, prosecution of such offenses is barred).  On September 16, 2004, the trial court,
acting in accordance with the State=s
recommendation, sustained appellant=s pleas
in bar and ordered the prosecution of these two charges barred with prejudice.

In August 2008, appellant filed applications for
writs of habeas corpus in each of his six cases, alleging that he received
ineffective assistance from Piel and that his pleas were involuntary.[6]  Appellant attached sworn statements to his
applications that averred to the following summarized facts.  

 

 

 








Appellant=s allegations   

In early 2004, appellant retained Piel and met
with him several times to discuss appellant=s
pending charges.[7]  During these discussions, appellant told Piel
that he was not interested in any plea bargain, and Piel told appellant that he
would provide an Aaggressive legal defense,@
including filing a motion to suppress evidence related to the drug cases and
using a non-prosecution statement from Meredith to gain dismissal of one of the
assault cases.  Appellant told Piel to
file the motion to suppress (and agreed to pay an increased fee to Piel for the
motion); he also succeeded in persuading 
Meredith to sign a non-prosecution statement and told Piel about
Meredith=s
willingness to do so.








In subsequent meetings between he and appellant,
Piel discussed the State=s plea offers and the potential
that appellant could be placed on community supervision; however, when
appellant reiterated that he wanted to contest the charges through a trial,
Piel reaffirmed that he would file the motion to suppress and engage in an
aggressive defense.  In May 2004, Piel
informed appellant for the first time that the district attorney=s office
would not dismiss the assault charge against Meredith based on a
non-prosecution statement;  however, Piel
told appellant that the assault case was triable because of Amistakes
the police made.@ 
Appellant asked Piel why he still had not filed the motion to suppress,
and he told Piel to either file the motion or return the portion of Piel=s fee
related to it.  Piel responded by telling
appellant that if he filed the motion, it would harm appellant=s
chances for a favorable plea bargain. 
Appellant again stated he was not interested in pleading guilty, then
Piel said that filing the motion to suppress would be futile and that appellant
would lose.








On May 28, 2004, appellant called Piel from jail
after police arrested him for his second assault charge.  Piel was disgusted to learn about appellant=s new
arrest, and when appellant explained that he had been Amaced,@ Piel responded
that appellant Aprobably deserved it.@  Piel persuaded appellant=s father
to not post appellant=s bail; thus, appellant remained
in confinement.  When appellant later met
with Piel, Piel told him that he had to enter into a plea bargain because there
were Atoo many
charges.@  Appellant maintained his innocence of the
charges arising from the May 28, 2004 arrest, but Piel Adidn=t care
and now [appellant] knew that [he] had to get another attorney or [he] would be
convicted.@ 
University of North Texas legal advisor Kathryn McCauley referred
appellant to Jason Jacoby, an attorney who did not have the Ahopeless,
defeatist attitude@ that Piel had.  However, appellant did not have money to pay
Jacoby=s
retainer fee, and appellant=s father
also would not pay Jacoby.[8]

In August 2004, after appellant missed a court
date and forfeited his bail bond, his father and a detective allegedly
conspired to have appellant rearrested. 
Appellant=s father refused to secure a
bond for appellant so that appellant would accept a plea bargain because
appellant=s father Ahad been
influenced against him@ by Piel.  On August 24, 2004, Piel visited appellant
and asked him to sign a power of attorney that assigned all of appellant=s legal
rights to his father.[9]  At that time, appellant and Piel had an
argument in which appellant accused Piel of being a Aset up
man@ who
only wanted to pursue plea bargains. Appellant realized that he Ahad lost
complete control of [Piel] over to [his] father,@ who
paid Piel=s fees without appellant=s
permission.








After the August 24, 2004 meeting, appellant only
saw Piel at court appearances; Piel refused to return his calls or come to the
jail for visits.  Piel told appellant
that he could not win at trial and that he was guilty.  Appellant wanted Piel to withdraw as counsel,
but Piel refused, stating that he worked for appellant=s
father, rather than appellant.  When
appellant and Piel had strategic disagreements, appellant=s father
threatened to Adisinherit and disown@
appellant unless he obeyed Piel. 
Eventually, Piel presented a plea bargain to appellant, and appellant
accepted the plea bargain because the court Atook no
action on [his] letters requesting that Piel be discharged@ and
because Piel refused to pursue the motion to suppress or request a contested
trial.

Jacoby submitted a sworn statement (that
appellant attached to his habeas applications) confirming McCauley=s
referral, appellant=s expressed unhappiness and
disagreements with Piel, appellant=s father=s
involvement in retaining Piel, and Piel=s
substitution for Jacoby on the fraudulent use of identifying information
charge.  Specifically, Jacoby stated that
Piel was upset that Jacoby had been appointed to appellant=s
fraudulent use of identifying information case and that Piel opined that
appellant did not need a court appointed lawyer.  Finally, Jacoby stated that he recalled going
to visit appellant in the jail to tell him that he was no longer appellant=s lawyer
on that case, and he remembered how disappointed appellant was that APiel was
back on his case.@








Appellant=s father
also submitted a statement that detailed appellant=s
disagreements with Piel and appellant=s desire
to discharge him.  The statement
confirmed the following:

$                  
appellant told his father that he was innocent of the charges brought
against him and that he wanted to enter not guilty pleas;

 

$                  
appellant was Adisenchanted@ with Piel and wanted to
discharge him because appellant was concerned that Piel was not willing to
contest appellant=s charges;

 

$                  
appellant=s father paid Piel=s fees after appellant
instructed him not to do so because appellant=s father believed that
Piel was Awell connected with the
district attorney=s office@ and could best represent
appellant;

 

$                  
appellant=s father asked Piel to
draft a power of attorney so that appellant=s father could manage appellant=s affairs, and appellant=s father used this power
of attorney to threaten appellant for not following Piel=s advice by entering a
plea bargain;

 

$                  
Piel consistently desired to have appellant take a plea bargain, while
appellant consistently desired to contest the charges;

 

$                  
Piel discussed confidential information with appellant=s father; and

 

$                  
appellant entered his no contest pleas Aas a result of joint
pressure on him@ caused by his father=s and Piel=s desires.

 

Appellant also attached other affidavits to his applications
concerning the incidents giving rise to the offenses to which he entered no
contest pleas and the defenses he would have used at trial related to those
charges.








Piel=s response

In September 2008, the trial court ordered that a
hearing on appellant=s habeas applications be
conducted by affidavit, and it required Piel to prepare a response to appellant=s
allegations.  Piel=s
affidavit stated that though he and appellant had disagreements, appellant
continued to want Piel to be his attorney. 
Specifically, Piel=s affidavit acknowledged,

[appellant] told me he
did not want me to represent him several times. 
And then he told me he did want me to represent him.  He would appear angry with me one minute, and
then he would flip-flop back to wanting me to represent him again.  From what I could tell, he treated his father
the same wayCwanting his help one
moment, and not wanting it the next. 
Overall, there was never any doubt as to the fact that he wanted me to
represent him and his father to participate in his defense.

 

Among other things, Piel=s
affidavit also explained that 

$                  
appellant gave consent for Piel=s substitution for Jacoby on appellant=s fraudulent use of
identifying information case, and appellant only filled out indigence forms
because that signaled Ahis way of blaming [Piel]
and everyone else for his trouble@;

 

$                  
appellant=s September 2004 letter
to the court signified his Apetulant way of always going back and forth@ on the issue of Piel=s representation;

 

$                  
appellant approved of Piel taking money from and discussing the cases
with appellant=s father, though Piel Adid not go into much
detail@ with appellant=s father about appellant=s cases;

 

$                  
contrary to the affidavits submitted by appellant, Piel never told
appellant that he worked for his father instead of him;  

 

$                  
appellant and his father both asked Piel to prepare the power of
attorney;








$                  
no viable argument existed that evidence of the drugs should have been
suppressed (because appellant did not complain of any illegal search but only
contended that he was not adequately linked to the drugs), and appellant did
not pay Piel any money specifically earmarked for a suppression motion;

 

$                  
appellant=s drug cases were poor
candidates for trial because (1) Piel believed that under cross-examination,
appellant=s temper Awould flair up and his
manic, crazed personality would be revealed to the jury,@ (2) the jury would not
believe testimony from a Adruggie-friend witness,@ and (3) an officer
believed he saw appellant kicking at the drugs on the ground;

 

$                  
appellant never told Piel that the drugs were not his; and 

 

$                  
while appellant desired initially to plead not guilty, and expressed
this desire in a Acrazed, manic manner,@ Piel did not force
appellant to plead guilty, Piel and appellant Aalways reached agreement
on a course of action,@ and appellant decided to
plead no contest after carefully considering Piel=s advice.

 

The trial court=s
decision








On September 26, 2008, the State filed proposed
findings of fact and conclusions of law.[10]  On October 6, 2008, the trial court denied
appellant=s habeas applications and
adopted the findings of fact and conclusions of law that the State had
submitted.  The trial court found that
Piel=s
affidavit was Amore credible@ than
the affidavits attached to appellant=s habeas
applications, and it concluded that appellant failed to demonstrate that Piel
afforded ineffective assistance or that his pleas were involuntary.  Appellant objected to the findings of fact
(contending that the evidence attached to his habeas applications contradicted
Piel=s
affidavit) and conclusions of law and filed his notices of these appeals.

                                             Jurisdiction

When a trial court lacks jurisdiction to consider
a habeas application, we also have no jurisdiction to consider the same.  See Dahesh v. State, 51 S.W.3d 300,
303 (Tex. App.CHouston [14th Dist.] 2000, pet.
ref=d).  In two of appellant=s cases,
in which the trial court barred prosecution, appellant filed habeas
applications under articles 11.05, 11.09, and 11.16 of the code of criminal
procedure.[11]  See Tex. Code Crim. Proc. Ann. arts.
11.05, 11.09, 11.16.  These articles
respectively state,

The Court of Criminal
Appeals, the District Courts, the County Courts, or any Judge of said Courts,
have power to issue the writ of habeas corpus; and it is their duty, upon
proper motion, to grant the writ under the rules prescribed by law.

 

Id. art. 11.05.

 








If a person is confined
on a charge of misdemeanor,[12]
he may apply to the county judge of the county in which the misdemeanor is
charged to have been committed, or if there be no county judge in said county,
then to the county judge whose residence is nearest to the courthouse of the
county in which the applicant is held in custody.

 

Id. art. 11.09.

 

A judge of the district
or county court who has knowledge that any person is illegally confined or
restrained in his liberty within his district or county may, if the case be one
within his jurisdiction, issue the writ of habeas corpus, without any motion
being made for the same.

 

Id. art. 11.16.

 








For a court to have jurisdiction over a habeas
application in a misdemeanor case under section 11.09, an applicant must be Aconfined@ or Arestrained@ by
either an accusation or a conviction.  See
Ex parte Schmidt, 109 S.W.3d 480, 483 (Tex. Crim. App. 2003); Ex parte
Rinkevich, 222 S.W.3d 900, 902 (Tex. App.CDallas
2007, no pet.); Dahesh, 51 S.W.3d at 302.  Collateral consequences related to a
conviction, such as exclusion from military service or use of the conviction to
enhance punishment in other cases, may constitute confinement.  Ex parte Crosley, 548 S.W.2d 409, 410
(Tex. Crim. App. 1977); see State v. Collazo, 264 S.W.3d 121, 126 (Tex.
App.CHouston
[1st Dist.] 2007, pet. struck) (noting that Athe fact
that [an applicant] is not physically confined does not preclude his application
or deprive the trial court of jurisdiction@); Ex
parte Davis, 748 S.W.2d 555, 558 (Tex. App.CHouston
[1st Dist.] 1988, pet. ref=d).

We sent appellant a letter expressing our concern
that because the trial court barred prosecution against him in two of the six
cases subject to this appeal, we had no jurisdiction over his applications in
those two cases.[13]  Appellant filed a response to our letter,
contending that though prosecution had been barred pursuant to section 12.45 of
the penal code, he was subject to having the cases offered in Aany
future sentencing hearing as part of his prior criminal history in an effort by
the State to obtain a more severe sentence, because a Plea in Bar is the
equivalent in law to being found guilty of the offense and becomes part of the
defendant=s >criminal
history.=@  Section 12.45 states:

(a) A person may, with
the consent of the attorney for the state, admit during the sentencing hearing
his guilt of one or more unadjudicated offenses and request the court to take
each into account in determining sentence for the offense or offenses of which
he stands adjudged guilty.

 








(b) Before a court may
take into account an admitted offense over which exclusive venue lies in
another county or district, the court must obtain permission from the
prosecuting attorney with jurisdiction over the offense.

 

(c) If a court lawfully
takes into account an admitted offense, prosecution is barred for that offense.

 

Tex. Penal Code ' 12.45.

For his proposition that a conviction barred
under section 12.45 may nonetheless be used as evidence in sentencing within
future cases, appellant relies in part on Perea v. State, 870 S.W.2d
314, 318 (Tex. App.CTyler 1994, no pet.).  In Perea, the Tyler Court of Appeals
held that when a defendant=s
prosecution is barred under section 12.45 of the penal code, the barred offense
is still Apart of a defendant=s prior
criminal record and become[s] a judgment of conviction.@  Id.; see also Woodard v. State,
931 S.W.2d 747, 750 (Tex. App.CWaco
1996, no pet.).

However, in Lopez v. State, the Court of
Criminal Appeals unanimously disapproved of the Perea decision, calling
the Tyler court=s logic Afaulty.@  253 S.W.3d 680, 686 (Tex. Crim. App.
2008).  In Lopez, the court
considered whether an offense barred under section 12.45 could be used as
impeachment evidence under rule of evidence 609(a), which states,








For the purpose of
attacking the credibility of a witness, evidence that the witness has been
convicted of a crime shall be admitted if elicited from the witness or
established by public record but only if the crime was a felony or involved
moral turpitude, regardless of punishment, and the court determines that the
probative value of admitting this evidence outweighs its prejudicial effect to
a party.

 

Tex. R. Evid. 609(a) (emphasis added); Lopez, 253 S.W.3d at 684B85.  The court noted that a Aconviction@ is a Ajudgment
or sentence that the accused is guilty as charged.@  Lopez, 253 S.W.3d at 685.  The court then held that an offense barred
under section 12.45 is not a conviction; it also cast serious doubt on whether
such an offense is, as appellant asserts, part of a defendant=s Aprior
criminal record@:

APrior criminal record@ did then and does now
include matters other than Afinal convictions.@  Even if ' 12.45 offenses were part of a defendant=s Aprior criminal record,@ that fact would not make
them Afinal convictions@ for the purpose of Rule
609.  Moreover, this Court=s comment in Whalon with
respect to the ' 12.45 offense being part
of the prior criminal record was mere dicta that was phrased not even as
a positive statement, but as a question.

 

Finally, we observe that
the ' 12.45 procedure can be
implemented only if the State consents. 
If the State wishes to have the use of that extraneous offense as a
prior conviction, it has another option: it can seek a conviction on the
extraneous offense.

 

Id. at 686 (footnotes omitted); see Whalon v.
State, 725 S.W.2d 181, 195 (Tex. Crim. App. 1986); see also Tex.
Code Crim. Proc. Ann. art. 37.07 ' 3(a)(1)
(Vernon Supp. 2008) (allowing evidence of a defendant=s Aprior
criminal record@ to be admitted at sentencing).








We
agree with and are bound by the Court of Criminal Appeal=s recent implication that
offenses barred under section 12.45 are neither convictions nor part of a
defendant=s prior criminal
record.  See Lopez, 253 S.W.3d at
686.  We thus hold that such offenses
have no sufficient collateral consequences to comprise Aconfinement@ or Arestraint,@ that such offenses can
be classified neither as an Aaccusation@ nor a Aconviction,@ and that we are consequently without
jurisdiction to consider habeas applications related to such barred
offenses.  See Tex. Code Crim.
Proc. Ann. art. 11.09; Schmidt, 109 S.W.3d at 483; Dahesh, 51
S.W.3d at 303.  Therefore, we dismiss the
two appeals in which prosecution was barred pursuant to section 12.45, cause
numbers 2-08-366-CR and 2-08-367-CR, for want of jurisdiction.  See Tex. R. App. P. 43.2(f).  We will proceed to consider the merits of the
habeas appeals of the remaining four cases.

 

                                       Standard
of Review








Absent a clear abuse of discretion, we must
affirm the trial court=s decision on whether to grant
the relief requested in a habeas corpus application.  Ex parte Bruce, 112 S.W.3d 635, 639
(Tex. App.CFort Worth 2003, pet. dism=d).  In reviewing the trial court=s
decision, we view the evidence in the light most favorable to the ruling and
accord great deference to the trial court=s
findings and conclusions.  Id.; see
Ex parte Amezquita, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006); Ex parte
Okere, 56 S.W.3d 846, 854 (Tex. App.CFort
Worth 2001, pet. ref=d) (explaining that in Areviewing
a trial judge=s decision to grant or deny
relief on a writ of habeas corpus, we afford almost total deference to a trial
judge=s
determination of the historical facts supported by the record@).  Such deference must be given even when all of
the evidence is submitted by affidavits. 
See Ex parte Wheeler, 203 S.W.3d 317, 325B26 (Tex.
Crim. App. 2006); Manzi v. State, 88 S.W.3d 240, 244 (Tex. Crim. App.
2002) (holding that in reviewing the denial of a motion to suppress evidence,
the appellate court Acorrectly employed a deferential
standard of review of the trial court=s
resolution of the historical facts from conflicting affidavits@).  In a writ of habeas corpus hearing, the
burden is on the applicant to prove his factual allegations by a preponderance
of the evidence and to demonstrate that an error contributed to his conviction
or punishment.  Ex parte Williams,
65 S.W.3d 656, 658 (Tex. Crim. App. 2001); Bruce, 112 S.W.3d at 639.








To establish ineffective assistance of counsel,
appellant must show by a preponderance of the evidence that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62B63 (Tex.
Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999).  In evaluating the
effectiveness of counsel under the first prong, we look to the totality of the
representation and the particular circumstances of each case.  Thompson, 9 S.W.3d at 813.  The issue is whether counsel=s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688B89, 104
S. Ct. at 2065.  Review of counsel=s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel=s conduct fell within a wide
range of reasonable representation.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.

To overcome the presumption of reasonable
professional assistance, Aany allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.@  Id. (quoting Thompson, 9 S.W.3d
at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State,
226 S.W.3d 425, 432 (Tex. Crim. App. 2007).








The second prong of Strickland requires a
showing that counsel=s errors were so serious that
they deprived the defendant of a fair and reliable trial.  Strickland, 466 U.S. at 687, 104 S.
Ct. at 2064.  In other words, appellant
must show there is a reasonable probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Id. at 694, 104 S. Ct.
at 2068.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of
the proceeding in which the result is being challenged.  Id. at 697, 104 S. Ct. at 2070.  To prevail in a habeas proceeding, the
applicant must establish both elements of the Strickland test by a
preponderance of the evidence.  See
Okere, 56 S.W.3d at 856.

No contest pleas must be made freely and
voluntarily.  See Tex. Code Crim.
Proc. Ann. art. 26.13(b) (Vernon Supp. 2008). 
A defendant=s plea is not voluntary when it
results from ineffective assistance of counsel. 
Ex parte Burns, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980).  The test for determining the validity of a
plea is whether the plea represents a voluntary and intelligent choice among
alternative courses of action open to the defendant.  Hill v. Lockhart, 474 U.S. 52, 56, 106
S. Ct. 366, 369 (1985).  As explained in Kniatt
v. State, a plea,








to be consistent with due
process of law, must be entered knowingly, intelligently, and voluntarily.  To be Avoluntary,@ a guilty plea must be the expression of the
defendant=s own free will and must
not be induced by threats, misrepresentations, or improper promises.  A defendant=s sworn representation
that his guilty plea is voluntary Aconstitute[s] a formidable barrier in any
subsequent collateral proceedings.@  An
applicant seeking habeas corpus relief on the basis of an involuntary guilty
plea must prove his claim by a preponderance of the evidence.  An applicant=s delay in seeking habeas
corpus relief may prejudice the credibility of his claim.

 

206 S.W.3d 657, 664 (Tex. Crim. App.) (citations omitted), cert.
denied, 549 U.S. 1052 (2006).  When a
defendant challenges the voluntariness of a plea based on the advice of
counsel, alleging that counsel was ineffective, the defendant has the burden to
show that (1) counsel=s performance fell below a
reasonable standard of competence, and (2) the defendant would, with a
reasonable probability, have pled not guilty and insisted on going to trial had
counsel not committed the alleged errors. 
Ex parte Moody, 991 S.W.2d 856, 857B58 (Tex.
Crim. App. 1999).

                                               Analysis








Appellant contends that the evidence attached to
his habeas applications, as related above, demonstrates that Piel=s
assistance in advising him to enter his no contest pleas was so deficient that
it was legally ineffective and that his pleas were therefore involuntary.  Specifically, appellant asserts that he
persistently informed Piel that he wanted to plead not guilty to each of his
charges, informed him of his desire for a jury trial, informed him of his
desire to attempt to suppress evidence, instructed him not to accept fees from
his father, and eventually informed him that he did not want his
representation, but that Piel induced him to enter pleas of no contest (through
a lack of other options caused by Piel=s
alleged inaction in preparing a legal or factual defense and through Piel=s
preference of appellant=s father=s
desires over appellant=s own desires).








If these allegations were true, appellant=s claims
would likely have merit.  However, Piel=s
affidavit provided the trial court with evidence either rebutting or explaining
each of these allegations.  Particularly,
Piel=s
affidavit furnished the trial court a basis to conclude that though appellant
vacillated on whether he wanted Piel=s
representation and though he wrote a letter expressing his desire to fire Piel
shortly before entering his plea bargain, appellant accepted Piel=s
representation and carefully listened to and agreed with Piel=s
strategic reasoning[14]
at the time he entered his pleas, thus making an intelligent choice among the
alternative courses of action.[15]  Hill, 474 U.S. at 56, 106 S. Ct. at
369.  Piel=s
affidavit also provided the trial court with a reason to determine that,
contrary to appellant=s affidavit and his father=s sworn
statement, appellant approved of (1) Piel=s
substitution for Jacoby on appellant=s
subsequent felony case, (2) Piel=s
discussion of cases with and acceptance of payment from appellant=s
father, and (3) the preparation of the power of attorney.








When faced with conflicting evidence[16]
about the circumstances affecting Piel=s
representation and the voluntariness of appellant=s pleas,
the trial court was required to resolve the conflict and make a judgment
call.  See Tex. Code Crim. Proc.
Ann. art. 11.072 ' 6(a) (requiring the trial court
to make a decision on a habeas application in a community supervision case
within sixty days of the state filing its answer); Hall v. State, 160
S.W.3d 24, 40 (Tex. Crim. App. 2004) (explaining that where there was
conflicting evidence regarding mental retardation, the Atrial
judge, who presided over the trial and the habeas proceedings, was in the best
position to evaluate the conflicting evidence@).  In doing so, it found Piel=s
affidavit to be more credible than those submitted by appellant; because we
cannot conclude that the trial court abused its discretion in this regard, we
will defer to its determination.  See
Amezquita, 223 S.W.3d at 367; Bruce, 112 S.W.3d at 639; Okere,
56 S.W.3d at 854.








Further,
along with Piel=s affidavit, the trial court
could have relied on other documents to discredit the allegations contained in
appellant=s applications.  First, appellant affirmed in writing that he
made his pleas Afreely and voluntarily@ and
that he understood the Aconsequences of [his] plea[s].@  As noted above, such statements comprise a
formidable barrier to a subsequent challenge regarding the voluntariness of the
pleas.  See Kniatt, 206 S.W.3d at
664; Labib v. State, 239 S.W.3d 322, 332 (Tex. App.CHouston
[1st Dist.] 2007, no pet.) (explaining that an Aaccused
who attests when he enters his plea . . . that he understands the nature of his
plea and that it is voluntary has a heavy burden . . . to show that his plea
was involuntary@).  Next, appellant was properly admonished in
accordance with article 26.13 of the code of criminal procedure.  See Tex. Code Crim. Proc. Ann. art.
26.13(a).  Receiving such admonishments
created a prima facie showing that appellant=s plea
was entered voluntarily.  Martinez v.
State, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); Jackson v. State,
139 S.W.3d 7, 14 (Tex. App.CFort
Worth 2004, pet. ref=d).  Finally, documents attached to the findings
of fact and conclusions of law adopted by the court indicated that in 2005,
while entering another plea bargain in another case with Piel=s
assistance, appellant affirmed that he was Asatisfied
with [Piel=s] services.@

For all
of these reasons, viewing the evidence in the light most favorable to the trial
court=s ruling
and according the trial court great deference, we hold that the trial court did
not abuse its discretion by denying appellant=s habeas
applications, by ruling that Piel=s
representation was not legally deficient, or by concluding that appellant=s pleas
were voluntary.  See Bruce, 112
S.W.3d at 639.

                                             Conclusion








Having determined that we
lack jurisdiction to consider the appeals in cause numbers 2-08-366-CR and
2-08-367-CR, we dismiss those appeals. Having also decided that the trial court
did not abuse its discretion by denying appellant=s
applications for writs of habeas corpus in the remaining cases, we affirm the
trial court=s orders in those cases.

 

TERRIE LIVINGSTON

JUSTICE

 

 

PANEL:  LIVINGSTON, GARDNER, and
WALKER, JJ.

 

PUBLISH

 

DELIVERED: 
February 19, 2009











[1]A sworn police statement
indicated that on an early morning in January 2004, appellant fought with
Melanie Meredith, his roommate, and that during the fight, appellant pepper
sprayed Meredith and struck her with a rubber mallet.  Appellant claims that he acted in
self-defense.  Another statement alleged
that in May 2004, appellant shoved, choked, and Abody slammed@ Lisa Marie James after
she refused his advances and tried to leave his motel room.  Appellant attached evidence to his habeas
applications relating that he did not assault James and that he only detained
her because he suspected that she had stolen some of his property.





[2]The State charged
appellant with possession of a dangerous drug (Neurontin) and possession of a
controlled substance (hydrocodone) based on the discovery of these substances
after an officer stopped appellant=s vehicle for expired registration, arrested
appellant for outstanding warrants, and observed him Ashuffling his feet around
on the ground.@  Appellant attached an affidavit to his habeas
applications stating that the drugs were not his; he also attached a sworn
statement from a passenger in his vehicle indicating that the drugs did not
belong to appellant, but instead belonged to another passenger, Katrina
Lesperance.  From the documents attached
to his applications, appellant theorized that Lesperance stated the drugs
belonged to appellant because she was being investigated by Child Protective
Services and because she was under deferred adjudication community supervision
for her own felony drug offense.





[3]The State alleged that
following the May 2004 alleged assault of James, appellant refused to admit
responding officers into his motel room.





[4]The unlawful restraint
charge also concerned the May 2004 assault.





[5]The county clerk filed
the letter in one of appellant=s assault cases; it does not appear in the record
of the other five cases subject to this appeal.





[6]He therefore claimed
violations of his federal and state constitutional rights.  In the four cases in which he received
convictions, appellant filed the applications pursuant to article 11.072 of the
code of criminal procedure.  See
Tex. Code Crim. Proc. Ann. art. 11.072 (Vernon 2005).  Article 11.072 provides an opportunity for
habeas corpus relief for defendants who challenge a conviction that resulted in
community supervision.  Id. ' 2(b)(1); see Ex parte
Cummins, 169 S.W.3d 752, 757 (Tex. App.CFort Worth 2005, no pet.).  In the two cases in which the trial court
sustained appellant=s pleas in bar to
prosecution, he filed the applications under articles 11.05, 11.09, and
11.16.  See Tex. Code Crim. Proc.
Ann. arts. 11.05, 11.09, 11.16 (Vernon 2005). 
Appellant=s applications differ
slightly in their discussion of the charges underlying each of the six cases as
well as the attached documents related to those charges, but Piel=s alleged wrongful
conduct, as discussed herein, commonly formed the basis for relief in each
application.  For this reason, we will summarize
the relevant facts alleged in each application, but we will consider the
applications together to determine whether the trial court=s denials of the
applications should be affirmed.





[7]Appellant=s affidavit asserts that
Piel advertised his specialization in assault cases and that Piel expressed
that he also had experience in defending against drug charges.





[8]Jacoby was later
appointed as appellant=s attorney on a
fraudulent use of identifying information charge that is not subject to this
appeal.  Appellant contends that without
his permission, Piel replaced Jacoby to represent him on this charge and that
Piel similarly replaced another attorney on a misdemeanor marijuana charge
without his permission.





[9]Copies of a general power
of attorney that appointed appellant=s father to handle all of appellant=s Afinancial and business
affairs@ are attached to
appellant=s habeas
applications.  The general power of
attorney indicated that it could be revoked by filing documents with the county
clerk.





[10]The State made such a
filing in each of the six cases, though the proposed findings contained in each
case and the documents attached to the findings slightly differ in relation to
the specific charges at issue.





[11]He also filed the
applications under two sections of the Texas Constitution.  See Tex. Const. art. V, '' 8, 16.  These sections generally relate to the
jurisdiction of district and county courts. 
Id.





[12]Both of the cases in
which the court barred prosecution of appellant were misdemeanors.





[13]We have found no cases
directly considering whether a court has jurisdiction to consider a habeas
claim related to an offense in which prosecution has been barred under section
12.45.





[14]Piel opined, A[appellant] would not have
been a believable witness, and based on the police reports, my experience, and
[appellant=s] demeanor, I believed
that [appellant] would have to testify to make the points that he would want to
make in a trial.@  Piel further explained, A[appellant=s] testimony, in my
experience, would have been an unmitigated disaster.  I knew under cross-examination that
his temper would flair up and his manic, crazed personality would be revealed
to the jury.  We would lose the trial
badly.@





[15]Piel stated, AI had numerous
discussions with [appellant] about his pleas, he knew what he was doing, I
never pressured him, and he chose to plead the way he pleaded.@  Piel further related, AI always bluntly shared
my beliefs with [appellant] and, in the end, we agreed as to how he should
plead.@  Finally, Piel explained, AI have no doubt that, at
some point, [appellant] told me that he wanted to go to trial,@ but Awhen he would calm down
and we would discuss negotiating his cases with the DA for the best deal he
could get, [appellant] and I always reached agreement on a course of
action.  I never made him do anything.@





[16]While Piel=s affidavit conflicts
with appellant=s affidavit and his
father=s statement, it does not
in large part necessarily conflict with Jacoby=s statement.  Jacoby=s statement essentially conveyed that appellant
was unhappy with Piel and wanted to contest his charges and that Piel
substituted for him on appellant=s fraudulent use of identifying information
case.  Piel=s affidavit concedes that
appellant was often unhappy with him, that at some point, appellant also told
him that he wanted to contest his charges, and that he replaced Jacoby, albeit
with appellant=s consent.  Also, Piel=s expression that appellant weighed his strategic
options and chose to enter his pleas without pressure impliedly rebuts
appellant=s contention that he
entered his pleas because of threats that his father would disinherit him.